THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH S. WHITE, Defendant-Appellant.

Third District   Nos. 3—89—0142, 3—89—0143 cons.

Opinion filed March 23, 1990.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Kenneth S. White, was charged by information with two counts of aggravated battery and two counts of battery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), 12—3(a)(1)). He was thereafter separately charged with one count of aggravated criminal sexual assault and two counts of criminal sexual assault (Ill. Rev. Stat. 1987,

ch. 38, pars. 12–14(a)(2), 12–13(a)(1)). Following a joint jury trial, the defendant was acquitted of one count of aggravated battery and convicted of the remaining charges. He was subsequently sentenced to concurrent terms of imprisonment of one year for each battery conviction, seven years for the aggravated battery conviction, 15 years for each criminal sexual assault conviction, and 30 years for the aggravated criminal sexual assault conviction. The defendant appeals.

At trial, the victim, Judith Roth, testified that she and the defendant had been living together since April of 1988. Her daughter, Susan Weingartz, also lived with them. Roth testified that on the evening of June 24, 1988, she, the defendant, and Susan attended a music festival in East Moline. She explained that throughout the evening she and the defendant were not getting along. She stated that she drove home because she felt the defendant had been drinking too much.

Roth testified that when they arrived home, Susan went out with friends and she went upstairs to take a shower. She then told the defendant that she was going to bed. The defendant became upset because he wanted her to stay up with him. Roth stated that she nonetheless went upstairs to read in bed. A few minutes later the defendant came up and began arguing with her. She told the defendant that she did not want to argue and that she was going to get her purse and go for a drive.

The defendant followed her down the stairs and into the kitchen. Roth testified that when she reached for her purse, the defendant hit her a few times. As she made her way to the front door, he ripped off her nightgown. She pleaded with him to call a doctor or go to a neighbor's house for help because she was hurt, but he refused. At that point the defendant began pacing and shouting that he had hit a woman and that now "they" were going to get him. The defendant then allowed Roth to go upstairs to put something on.

Roth testified that she was feeling weak and had a hard time climbing the stairs. She stated that she had to take one step at a time, resting in between each of the 20 steps. The defendant was alongside her the entire time. Roth stated that when she got to the bedroom, the defendant pushed her down on the bed and requested that she have oral sex with him. He then attempted to place his penis in her mouth. She told him that she was unable to have oral sex with him because her jaw was broken. Roth testified that she could not remember whether the defendant's penis made contact with her mouth. She further testified that the defendant then held her down on the bed, pulled up her housecoat, and had sexual intercourse with her without her consent.

While the defendant was still on top of Roth, Susan came home and found them in the bedroom. Roth stated that when Susan realized that Roth was hurt, she began screaming and hitting the defendant. This allowed Roth to run out of the house and get help.

Susan testified that when she returned home after being out with her friends, she went upstairs and into her mother's bedroom, where she found the defendant lying on top of her mother. When she saw that her mother was hurt, she went to the phone to try to call for help. At that point the defendant came at her and punched her in the mouth. Susan stated that she then ran downstairs, but when she tried to get to the front door, the defendant hit her again. The defendant then ran out the front door, and she ran to a neighbor's house.

The defendant testified on his own behalf. He stated that he was angry with Roth that evening because she had invited Susan to go to the music festival with them. The defendant admitted that he hit Roth a few times, but explained that he did so because she kicked him. He denied having sexual intercourse with her and stated that they had had intercourse one or two days before the incident.

The physical evidence established that a trace amount of semen was found on an oral swab taken from Roth at the hospital immediately after the incident. A larger amount of semen was found in a vaginal swab. The expert testimony revealed that the presence of seminal fluid on a vaginal swab indicated that sex had occurred within 72 hours of the taking of the swab.

The jury subsequently acquitted the defendant of aggravated battery with respect to Susan Weingartz, but convicted him of the remaining charges. The trial court sentenced the defendant to one year in prison for the battery of Weingartz, seven years for the aggravated battery of Roth, 15 years on each count of criminal sexual assault, and 30 years for aggravated criminal sexual assault. The court also sentenced him to one year in prison for the battery of Roth, but simultaneously vacated that sentence.

The defendant argues on appeal that his conviction for aggravated criminal sexual assault must be reversed because the bodily harm that served as the aggravating factor for that offense was not inflicted during its commission but rather occurred prior to it and in a different location.

The relevant statute provides that a defendant commits aggravated criminal sexual assault if during the commission of a criminal sexual assault he causes bodily harm to the victim. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2).) In *People v. Colley* (1989), 188 Ill. App. 3d 817, 544 N.E.2d 812, this court addressed the same issue

now raised by the defendant. In *Colley*, the victim testified that she had awoken during the night and found the defendant standing naked over her bed. He told her that he intended to have sex with her. When she told him to get away from her, he sexually assaulted her. The defendant then asked her if she had any money. After accompanying the victim to the bathroom, he hit her in the eye and told her he would kill her if she did not give him some money. He then cut the victim on the neck and chin with a pocketknife. The defendant was subsequently convicted of aggravated criminal sexual assault.

On appeal he argued that he could not be convicted of aggravated criminal sexual assault because the victim's stab wounds occurred too long after the sexual acts were completed to be considered part of the same course of conduct. This court rejected his argument, reasoning that the stab wounds had occurred sufficiently close in time to the sexual acts so that they could be found to have been committed during the course of the sexual assault. We declined to draw a bright line between the end of the sexual acts and the bodily harm that occurred afterward, as that would defeat the statutory purpose of protecting victims from sex offenders.

Similarly, we refuse to do so in the instant case. The victim testified that the defendant hit her several times downstairs. The defendant admitted hitting Roth at least twice. He then followed her upstairs to her bedroom and sexually assaulted her. We find that the period between the beatings and the sexual assault was sufficiently close so that the beatings could be found to have been committed during the commission of the sexual assault.

The defendant also argues that the trial court erred in imposing multiple convictions based on the same physical acts. An act is defined as any overt or outward manifestation which will support a different offense, and it is well settled that multiple convictions cannot be based on the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) However, where there are multiple acts, their interrelationship does not preclude multiple convictions and the imposition of concurrent sentences. *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

The defendant argues that if his conviction for aggravated criminal sexual assault is affirmed by this court, his convictions for criminal sexual assault, aggravated battery, and battery should be vacated because they were based on the same physical acts as the aggravated criminal sexual assault conviction. The State acknowledges that the defendant's conviction for battery and criminal sexual assault should be vacated, but argues that his conviction for aggravated battery

should not. We agree.

■ ■ The mere fact that the defendant's aggravated criminal sexual assault conviction was based upon bodily harm did not preclude his conviction for aggravated battery based on great bodily harm. The evidence showed that the defendant hit Roth numerous times. Therefore, since there were multiple acts, we do not find it necessary to reverse the defendant's conviction for aggravated battery. Rather, the defendant's conviction for aggravated battery is affirmed, while his convictions for battery and criminal sexual assault are reversed.

The part of the judgment of the circuit court of Rock Island County convicting the defendant of the battery and criminal sexual assaults of Judith Ross, together with the respective sentences, are reversed. The convictions for aggravated criminal sexual assault and aggravated battery of Judith Ross, and the conviction for battery of Susan Weingartz, along with the sentences imposed for those convictions, are affirmed.

Affirmed in part; reversed in part.

BARRY and WOMBACHER, JJ., concur.