2025 IL App (1st) 231851-U

No. 1-23-1851

Order filed May 30, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 2379 |
| | ) | |
| DALE LEWIS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was sufficient to prove defendant guilty beyond a reasonable doubt of aggravated criminal sexual assault and aggravated criminal sexual abuse.

¶ 2    Following a bench trial, defendant Dale Lewis was convicted of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2016)) and aggravated criminal sexual abuse (720 ILCS 5/11-1.60(a)(6) (West 2016)) and was sentenced to consecutive prison terms of 15 and 3 years, respectively. On appeal, defendant concedes that he was proved guilty beyond a reasonable doubt

of criminal sexual assault and criminal sexual abuse, but challenges the sufficiency of the evidence to sustain his convictions of the aggravated versions of those crimes. For the reasons that follow, we affirm.

¶ 3 Defendant's convictions arose from an assault on S.R. on January 9, 2017. Following his arrest, defendant was charged by indictment with four counts of aggravated kidnapping, five counts of aggravated criminal sexual assault, one count of attempted aggravated criminal sexual assault, one count of robbery, seven counts of aggravated criminal sexual abuse, and four counts of aggravated battery. The State proceeded to trial on count III, aggravated kidnapping; count V, aggravated criminal sexual assault; count XI, robbery; count XVI, aggravated criminal sexual abuse; and count XXII, aggravated battery; and nol-prossed the remaining counts.

¶ 4 Relevant here, count V, which charged aggravated criminal sexual assault, alleged that defendant made contact between his penis and S.R.'s sex organ and "caused bodily harm to S.R., to wit: broken wrist, broken foot, bruising, and scratches." Count XVI, which charged aggravated criminal sexual abuse, alleged that defendant "touched his hand to S.R.'s breast *** during the course of committing any other felony, to wit: aggravated battery." Count XXII, which charged aggravated battery, alleged that defendant strangled S.R.

¶ 5 At trial, S.R. testified that, on the morning in question, she walked her brother and her three children to school. School started at 8 a.m., but they were late. After dropping off the children, S.R. started walking to a beauty supply store. S.R. was wearing black joggers and a black sweater, had money in her bra, and was listening to music with Bluetooth headphones. As she walked on West Lake Street, she noticed a "shiny" vehicle slowing down. The driver tried to get her attention through the open window. S.R. removed her headphones but "kept walking and

minding [her] business" until she felt someone behind her. She felt hands on her neck, could not breathe, and blacked out.

¶ 6     When S.R. regained consciousness, she was in a vehicle. She initially testified that she did not remember whether she was in the front or back seat, but then identified a photograph of the vehicle's front seat and stated that she was lying on her back with her head near the center console and her feet hanging out of the passenger-side door. Defendant, whom she identified in court, was on top of her, attempting to put his penis in her mouth. S.R. fought defendant; he told her to shut up while "punching" her face. Defendant forced his penis into her mouth, touched her breasts under her bra, and pulled down her jogger pants and underwear. He forced his penis into her vagina, which made her feel "disgusted."

¶ 7     S.R. screamed. When she heard people's voices outside the vehicle, defendant got up and ran around to the driver's side. S.R. started pulling up her pants and moving out of the vehicle. Defendant "pressed on the gas and [S.R.] flew out of the car," landing on her face on the concrete as defendant drove away.

¶ 8     A man and a woman helped S.R. up and into another vehicle. Eventually, the police took her to a hospital. There, a rape kit was administered. S.R. remembered complaining about pain in her arm, wrist, ankle, and head while at the hospital. She testified that she was given ice packs, a "wrist thing," and a cast for her ankle, which was fractured. The money she had been carrying in her bra was missing.

¶ 9     In court, S.R. identified photographs of scratches around her chest and neck. She stated that she did not have those scratches before the incident and that she "probably" sustained them when defendant had his hands around her neck. She also identified photographs of a bruise on her

elbow, swelling to her ankle, a scrape on her knee, a knot on her head, scratches and dark marks under her eyes, and a "busted" lip, all of which she sustained on the day of the incident.

¶ 10     On cross-examination, S.R. clarified that, when defendant first started talking to her through his vehicle's open window, she took out one of her headphones and asked, "[E]xcuse me, what did you say[?]" She denied that she approached the vehicle and entered it. S.R. acknowledged that, on the day of the incident, she did not tell the police that she had blacked out or that defendant had put his penis in her mouth. She also acknowledged that in her grand jury testimony, she never stated that defendant inserted his penis into her mouth. S.R. agreed that, when defendant ran around to the driver's side of his vehicle, she did not exit the vehicle. She acknowledged that, in her grand jury testimony, she related that defendant told her to get out of the vehicle and she "was like no no." S.R. agreed that, even though the passenger door was open, she did not exit the vehicle or run for help. She also agreed that she knew one of the police officers at the hospital from high school, and that the officer asked her whether defendant "wasn't trying to pay [her] for services."

¶ 11     On redirect examination, S.R. testified that she was not a prostitute, did not have sex for money, and had not made any kind of arrangement with defendant where she would exchange sex for money. She stated that, when defendant ran to the driver's side of his vehicle, her pants were down and she did not run because she was weak. When asked for details about what she told the police, she initially stated that she did not remember because her adrenaline was rushing and she was scared. She then agreed that she told an officer that defendant kidnapped and raped her.

¶ 12     Chicago police officer Gina Butzen testified that, around 8:50 a.m. on the day in question, she was parked in her squad vehicle on North Menard Avenue when she noticed people jumping up and down and pointing down West Lake Street. She put her vehicle in drive and turned onto

Lake, where she saw a black Mercedes and a person, later determined to be S.R., "hanging out of the car and falling to the ground." Butzen activated her lights and siren and followed the vehicle, which was traveling eastbound. Eventually, it pulled over and the driver, later determined to be defendant, was arrested.

¶ 13 Footage of the incident recorded by Butzen's dashboard camera was published in court and admitted as an exhibit. The footage, which this court has viewed, depicts two people running in the street toward Butzen, and three people waving and pointing eastward on Lake. Butzen turns onto Lake and a black SUV comes into view. As it pulls away from the curb, a person tumbles from the passenger side and barrel rolls to the curb. Butzen drives by the person and pursues the SUV.

¶ 14 Dr. David Anthony testified that he treated S.R. in the emergency room at West Suburban Hospital. S.R. presented with multiple injuries, including an abrasion near her left eye; an abrasion near her left nostril; a laceration on her right inner upper lip; tenderness over her sternum; soft tissue swelling over her left elbow; tenderness on the thumb side of her left wrist; scattered quarter-sized bruises on her right forearm; an abrasion on her right knee; tenderness over her left ankle; a hematoma on the center of her forehead with an overlying abrasion; and linear abrasions on her neck, anterior chest, and left upper back and shoulder. Subsequent imaging revealed fractures in her left wrist and left heel.

¶ 15 Anthony conducted a sexual assault examination, during which he noted an "area of abrasion" on S.R.'s right labia minora. In court, he explained that "[a]n abrasion is just sort of a medical word for a scrape" and that, in general, abrasions are indicative of some sort of local trauma. He agreed that the injury to S.R.'s lip was consistent with being punched, as such

lacerations usually result from teeth puncturing the lip when something forcefully hits a person in the mouth. He also agreed that the abrasion near S.R.'s eye was consistent with being punched, and that the scratches on her neck could be consistent with strangulation or choking.

¶ 16    On cross-examination, Anthony agreed that all of S.R.'s injuries, aside from the abrasion on her labia minora, could be consistent with blunt force trauma, and that falling out of a moving vehicle onto pavement would be considered blunt force trauma. On redirect examination, he stated "[i]t would be extremely unlikely" that the abrasion on S.R.'s labia minora could have been caused by being thrown from a vehicle.

¶ 17    Defendant testified that, on the morning in question, he dropped his daughter off at school and gave a friend a ride to work. While he was driving home, he saw S.R., honked, and waved at her through his open window. She pointed to a nearby bus stop, where he pulled over. When S.R. approached, he asked her whether she wanted to "hangout for a little while, maybe get into something." She agreed, opened the passenger door, and entered the vehicle. Defendant asked S.R. if they could have sexual intercourse or oral sex, and S.R. said yes, for $60 or $70.

¶ 18    Defendant drove to his house, which was a few blocks away, and parked in the garage. S.R. performed oral sex on him in the vehicle, and then they had vaginal sex outside the vehicle in the garage. While defendant was driving S.R. back to the location where he picked her up, she asked for money. Defendant told her he was not going to pay because he had not enjoyed the sex. S.R. got upset, punched and scratched him repeatedly, and yelled that if he did not give her the agreed-upon money, she would say he raped her.

¶ 19    Defendant tried to pull over "and get her out," but S.R. told him she would not exit the car until he paid her. He tried to block her punches with his arm while he drove, but S.R. was "jumping

all over" him. Defendant admitted that his arm may have hit her face while he was blocking her punches and attempting to hold her, but stated that he was not trying to hurt her. When he "finally got a chance to pull over again," he tried but failed to push her out. He then exited the vehicle and attempted to open the passenger door, both by pulling it and by using his key fob, but was not able to open the door because S.R. had a finger on the power lock.

¶ 20    After a few minutes of moving door to door, defendant "finally got one of the doors to open" and entered the vehicle. He asked S.R. to "please get out the car," but she refused. Defendant described what happened next:

> "At Lake and Menard, I'm still trying to get her out of the vehicle. I'm still trying to get her out, I eventually get the door open and as I'm pulling off, I pushed her out, out the door, she lands like right by the curb because I didn't really get a chance to like pull right out of traffic."

Defendant drove away and was arrested minutes later.

¶ 21    On cross-examination, defendant testified that he did not know S.R. was a prostitute until she entered his vehicle. However, he later stated that "this wasn't the first time she got in [his] vehicle." He explained:

> "She got in there like the previous summer and we didn't get a chance to get into any type of sex that time because I didn't—wasn't going to pay that amount, so I dropped her back off that time on the same block, that's the block that she picks up guys, sex for cash."

¶ 22    Defendant testified that, on the day in question, he had initially planned to have sex with S.R. in his house, but changed his mind in the garage because the sex they had there was "horrible" and "not working out." He decided he was not going to pay S.R. while he was driving her back to

the location where he picked her up. He further testified that he told the police S.R. wanted $60 or $70 in exchange for sex.

¶ 23    In rebuttal, Chicago police sergeant Oswaldo Ochoa testified that he spoke with defendant on the day in question. At the scene, defendant told Ochoa that he had "just met" S.R. Later that morning in the lockup, when Ochoa asked defendant whether he knew S.R., defendant answered, "[N]ah, I just met that mother*** girl." Chicago police detective Chris Matias testified that, when he spoke with defendant in the lockup, defendant stated that there was no agreement to an amount of money in exchange for sex.

¶ 24    The court found defendant guilty of aggravated criminal sexual assault (count V) and aggravated criminal sexual abuse (count XVI), and acquitted defendant of aggravated kidnapping (count III), robbery (count XI), and aggravated battery (count XXII). The court found that S.R. was credible, that she was not significantly impeached, and that defendant was not credible. As to the element of bodily harm, the court stated, "She had many injuries that were presented, obviously bodily harm."

¶ 25    Defendant filed a posttrial motion, raising numerous arguments. Relevant here, he asserted that he was not proved guilty of the aggravating factor of aggravated criminal sexual assault where S.R.'s bodily harm was not contemporaneous to the criminal sexual assault but, rather, occurred as a result of her falling out of the vehicle after the sexual acts had been completed. Defendant also argued that the State failed to prove "every material allegation" of aggravated criminal sexual abuse beyond a reasonable doubt. Following argument, the court denied the motion. Relevant here, the court stated that it found "the injuries suffered by [S.R.] were corroborative" and that "those injuries were contemporaneous with the act."

¶ 26    The court subsequently sentenced defendant to consecutive prison terms of 15 years for aggravated criminal sexual assault and 3 years for aggravated criminal sexual abuse.

¶ 27    On appeal, defendant first challenges the sufficiency of the evidence to convict him of aggravated criminal sexual assault.

¶ 28    When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "A reviewing court must allow all reasonable inferences from the record in favor of the State" (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)), and the positive and credible testimony of a single witness is sufficient to convict (*People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009)).

¶ 29    It is the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts in the evidence, and to draw reasonable inferences from the evidence, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Gray*, 2017 IL 120958, ¶ 35. Reversal is justified only where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt (*People v. Slim*, 127 Ill. 2d 302, 307 (1989)) or where proof of an element of a crime is wholly lacking (*People v. Sweigart*, 2021 IL App (2d) 180543, ¶ 56).

¶ 30    As charged in count V in this case, a person commits aggravated criminal sexual assault if he commits criminal sexual assault and "during the commission of the offense," he "causes bodily harm to the victim." 720 ILCS 5/11-1.30(a)(2) (West 2016). Specifically, in count V, the State

alleged that defendant "caused bodily harm to S.R., to wit: broken wrist, broken foot, bruising, and scratches."

¶ 31    In this court, defendant does not contest that he committed criminal sexual assault, or that he caused the bodily harm S.R. sustained by falling from his moving vehicle to the pavement. He only contends that the State failed to prove beyond a reasonable doubt that he caused the charged bodily harm to S.R. "during the commission of the offense," so as to elevate his crime from criminal sexual assault to *aggravated* criminal sexual assault. Based on the testimony of S.R.'s treating physician, Dr. Anthony, defendant asserts that all of the injuries alleged in count V were consistent with S.R. falling out of his vehicle. He argues that, because this fall occurred after the commission of the criminal sexual assault, as opposed to while it was occurring, none of these injuries qualify as aggravating factors. Defendant acknowledges Dr. Anthony's testimony that the laceration on the inside of S.R.'s lip and the abrasion near her left eye were consistent with being punched. However, he maintains that neither of these two injuries constitute a "broken wrist, broken foot, bruising, [or] scratches," and that, in any case, the State did not establish that his "punching" S.R. in the face caused any harm.

¶ 32    In making his arguments, defendant relies heavily on *People v. Giraud*, 2012 IL 113116. In *Giraud*, the defendant was convicted of aggravated criminal sexual assault based on an allegation that, during the commission of a criminal sexual assault, he acted in a manner that threatened or endangered the life of the victim. *Id.* ¶ 1 (citing 720 ILCS 5/12-14(a)(3) (West 2006)). Specifically, the jury found that the defendant had forcible intercourse with his teenage daughter without wearing a condom, knowing he was HIV positive. *Id.* This court reduced the defendant's conviction to criminal sexual assault, and the State appealed. *Id.*

¶ 33    On review, our supreme court explained that it was tasked with discerning the meaning of the statutory phrase "during *** the commission of the offense" in conjunction with the phrase "acted in such a manner as to threaten or engender the life of the victim." *Id.* ¶ 7. Our supreme court held that because the victim did not contract HIV, the defendant had not threatened or endangered her life. *Id.* ¶¶ 33-39. According to the court, threatening the victim's life would have required the defendant to tell her at the time of the assault that he was HIV positive (*id.* ¶¶ 14-16), and endangering her life would have required that she actually become infected with HIV during the assault (*id.* ¶¶ 33-35). The *Giraud* court affirmed the reduction of the defendant's conviction because the "mere" exposure to HIV during the commission of the sexual assault did not threaten or endanger the victim's life. *Id.* ¶ 39.

¶ 34    The facts of the instant case do not resemble those of *Giraud*, where our supreme court found that no aggravating factor had occurred. See *id.* Here, the aggravating factor was causing bodily harm to S.R., and the only issue remaining is whether that bodily harm occurred during the commission of the offense. Defendant observes that, in *Giraud*, our supreme court noted that, in the statute defining aggravated criminal sexual assault, the only aggravating factor which requires merely that it occur "as part of the same course of conduct" as the commission of the offense is the delivery of any controlled substance. *Id.* ¶ 12 (citing 720 ILCS 5/12-14(a)(7) (West 2006)); see also 720 ILCS 5/11-1.30(a)(7) (West 2016). The other aggravating factors, including causing bodily harm, must occur "during" the commission of the offense. See 720 ILCS 5/12-14(a)(1)-(6), (8)-(10) (West 2006); 720 ILCS 5/11-1.30(a)(1)-(6), (8)-(10) (West 2016). Here, we do not find defendant's argument that the bodily harm to S.R. was not inflicted during the commission of the criminal sexual assault to be convincing.

¶ 35    In concluding that defendant caused bodily harm to S.R. during the commission of criminal sexual assault, we find instructive a line of cases beginning with *People v. Colley*, 188 Ill. App. 3d 817, 818 (1989).

¶ 36    In *Colley*, the defendant entered the victim's home and sexually assaulted her in her bedroom. After allowing her to use the bathroom, he struck her, demanded money, threw her on the bed, and placed a pillow over her face for about a minute. *Id.* The defendant then ordered the victim to go downstairs, where he cut her on the neck and chin with a knife. *Id.* at 818-19. We affirmed the defendant's conviction for aggravated criminal sexual assault based on bodily harm, holding that the stabbing was sufficiently close in time to the sexual assault to be deemed to have been committed "during the course" of the sexual assault. *Id.* at 820. We explained that we would not draw a bright line between the ending of the sexual acts and the bodily harm occurring afterward, "as that would defeat the statutory purpose of protecting victims from sex offenders." *Id.*

¶ 37    In *People v. White*, 195 Ill. App. 3d 463, 465 (1990), the defendant hit the victim "a few times" in their kitchen and ripped off her nightgown. He then allowed her to go upstairs to put something on. *Id.* The victim took one step at a time, resting in between each of the 20 steps, with the defendant at her side. *Id.* When they got to the bedroom, the defendant pushed her down on the bed and sexually assaulted her. *Id.* We affirmed the defendant's conviction for aggravated criminal sexual assault premised on bodily harm, concluding that "the period between the beatings and the sexual assault was sufficiently close so that the beatings could be found to have been committed during the commission of the sexual assault." *Id.* at 467.

¶ 38      In *People v. Thomas*, 234 Ill. App. 3d 819, 825 (1992), the defendant forced the victim to accompany him to a private room in a dance club, where he slapped her, forced her to eat paper and disrobe, and sexually assaulted her, following which he forced her to submit to another sexual act with another man he had invited into the room. After the other man left, the defendant removed a long fork from a cabinet, placed it on a hot plate, and threatened to anally assault the victim with a broom with a splintered handle. *Id.* Following a brief interruption by someone who came to the room, the defendant used the hot fork to "brand" the victim on her left and right chest areas and left shoulder. *Id.* He then took her to an apartment and sexually assaulted her again. *Id.* We affirmed the defendant's conviction for aggravated criminal sexual assault based on bodily harm, finding that the burnings were part of an unbroken series of events and were very near in time and closely linked to the forced sexual acts. *Id.*

¶ 39      In *People v. Lamon*, 346 Ill. App. 3d 1082, 1085-86 (2004), the defendant grabbed the victim by her hair, urinated on her, and tied her wrists. After striking her several times with a wire coat hanger, the defendant sexually assaulted her. *Id.* We affirmed the defendant's conviction for aggravated criminal sexual assault based on bodily harm. *Id.* at 1095. We explained that we would not draw a bright line requiring the State to establish the precise sequence of events, stating, "What is significant is not the order in which the forced intercourse and assault occurred, but that [the] defendant sexually assaulted the victim and the infliction of the bodily injury occurred during or as a part of the commission of the forcible rape." *Id.* at 1091.

¶ 40      This line of cases establishes that, to sustain a conviction for aggravated criminal sexual assault premised on causing bodily harm, the infliction of bodily harm may occur either before or after the sexual assault but must be sufficiently close in time and closely linked to the sexual acts

for them to be considered as having been committed during the commission of the offense. *Lamon*, 346 Ill. App. 3d at 1091; *Thomas*, 234 Ill. App. 3d at 825; *White*, 195 Ill. App. 3d at 467; *Colley*, 188 Ill. App. 3d at 820.

¶ 41 In this case, the evidence, viewed in the light most favorable to the prosecution, showed that defendant inflicted bodily harm to S.R. during the commission of the sexual assault. While in the front passenger seat of his vehicle on the side of the road, with the door open, defendant punched S.R. in the face and then forced his penis into S.R.'s mouth, touched her breasts under her bra, pulled down her jogger pants and underwear, and forced his penis into her vagina. When S.R. heard people's voices outside the vehicle, defendant got up and ran around to the driver's side. S.R. started pulling up her pants and moving out of the vehicle. Defendant pushed S.R. out of the vehicle as he pulled away from the curb. She "flew out of the car," landing on her face and barrel rolling on concrete as defendant drove away.

¶ 42 Given Dr. Anthony's testimony that the injury to S.R.'s lip and the abrasion near S.R.'s eye were consistent with being punched, it is a reasonable inference from the evidence that defendant caused these injuries to S.R. during commission of the offense when he punched her in the face immediately before forcing his penis into her mouth. Similarly, Dr. Anthony's testimony that the abrasion on S.R.'s labia minora likely resulted from trauma and was extremely unlikely to have been caused by being thrown from a vehicle supports that this bodily injury to S.R.'s vagina resulted from defendant's forcing his penis into S.R.'s vagina.

¶ 43 Crucially, defendant's pushing S.R. out of a moving vehicle onto the pavement, causing, *inter alia*, fractures to her left wrist and left heel, a hematoma on her forehead, and abrasions on several parts of her body, was close enough in time to the sexual assault to be considered to have

occurred during the commission of that assault. The sexual assault and the push from the moving vehicle were part of an unbroken series of events and closely linked. Accordingly, we find that the State proved defendant guilty of aggravated criminal sexual assault beyond a reasonable doubt.

¶ 44 Defendant argues that under *Giraud*, 2012 IL 113116, discussed above, the State was required to prove that S.R. sustained the alleged bodily harm while the sexual assault was occurring. He asserts that, to the extent that *Lamon* and *Thomas* contradict *Giraud*, they were overruled. He also distinguishes *Lamon* and *Thomas* on the basis that, in those cases, the defendants injured the victims to further their sexual assaults, whereas he injured S.R. while attempting to end his interaction with her. We disagree with defendant's interpretation of *Giraud*.

¶ 45 Contrary to defendant's position, the *Giraud* court did not hold that a defendant's actions that occur close in time to a sexual assault could not be considered an aggravating factor. Instead, the *Giraud* court was concerned with the fact that no threat was communicated during the offense and the victim's life was not endangered during the offense. *Giraud*, 2012 IL 113116, ¶ 39. As such, we do not consider *Giraud* to have overruled the line of cases establishing that an injury inflicted close in time to a sexual assault may be found to have been committed during the sexual assault. See *People v. Calderon*, 2022 IL App (2d) 200029-U, ¶ 47 ("We *** do not read *Giraud* as a limitation on the *Colley* line of cases that an aggravating circumstance may be close in time to the underlying offense."); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 46 Defendant's second contention on appeal is a challenge to the sufficiency of the evidence to sustain his conviction for aggravated criminal sexual abuse. As charged in count XVI, a person commits aggravated criminal sexual abuse if he commits criminal sexual abuse and he "commits

the criminal sexual abuse during the course of committing or attempting to commit any other felony." 720 ILCS 5/11-1.60(a)(6) (West 2016). Specifically, in count XVI, the State alleged that defendant "touched his hand to S.R.'s breast *** during the course of committing any other felony, to wit: aggravated battery." As with his first contention on appeal, defendant contests only the aggravating factor for this crime.

¶ 47 In his opening brief, defendant noted that the trial court found him not guilty of the only count of aggravated battery on which the State proceeded to trial, count XXII, which alleged that he strangled S.R. He asserted that, because the trial court acquitted him on count XXII, the State failed to prove him guilty of aggravated criminal sexual abuse. As relief, he argued that this court should reduce his conviction to criminal sexual abuse and remand for resentencing.

¶ 48 In its appellee's brief, the State initially conceded the issue and requested the same relief as defendant. However, several pages later, the State changed course and argued that defendant was properly convicted of aggravated criminal sexual abuse. Specifically, the State maintains that, while it was required to prove defendant committed an act of sexual abuse during the course of committing "an aggravated battery," it was not required to prove the specific aggravated battery alleged in count XXII. In making this argument, the State relies on *People v. Woods*, 173 Ill. App. 3d 244, 248-49 (1988), in which this court affirmed the defendant's conviction for armed violence based on aggravated battery causing permanent disability, even though the defendant had not been charged with aggravated battery causing permanent disability, stating, "[I]t is not necessary that the defendant be charged with the predicate offense."

¶ 49 The State argues that it proved defendant guilty beyond a reasonable doubt of aggravated battery premised on causing great bodily harm to S.R. See 720 ILCS 5/12-3.05(a)(1) (West 2016)

("A person commits aggravated battery when, in committing a battery *** he or she knowingly does any of the following: (1) Causes great bodily harm or permanent disability or disfigurement."). The State asserts that S.R. suffered great bodily harm where she presented at the emergency room with an abrasion near her left eye; an abrasion near her left nostril; a laceration on her right inner upper lip; tenderness over her sternum; soft tissue swelling over her left elbow; tenderness on the thumb side of her left wrist; scattered quarter-sized bruises on her right forearm; an abrasion on her right knee; tenderness over her left ankle; a hematoma on the center of her forehead with an overlying abrasion; and linear abrasions on her neck, anterior chest, and left upper back and shoulder; and where subsequent imaging revealed fractures in her left wrist and left heel.

¶ 50    In his reply brief, defendant makes no counterargument to the State's claim that it was not required to have charged him with aggravated battery premised on causing great bodily harm to S.R. He also does not dispute that the injuries S.R. suffered below her neck constitute great bodily harm. Instead, defendant reiterates his *Giraud*-based argument that the injuries S.R. incurred from being thrown from his vehicle occurred after, as opposed to during, the offense, and thus cannot be used to elevate his conviction. He further argues that the State failed to establish that any of his actions during the commission of the offense injured S.R. and that, even assuming the injuries to her lip, eye, and neck occurred during the commission of the offense, they do not constitute "great bodily harm."

¶ 51    We have already considered and rejected defendant's argument that the injuries S.R. sustained when he pushed her from his moving vehicle occurred after, as opposed to during, the offense. These injuries included fractures to S.R.'s left wrist and left heel. This court has found fractured or broken bones to constitute great bodily harm. See, *e.g.*, *People v. Pulgar*, 323 Ill. App.

3d 1001, 1013 (2001) (broken leg); *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1069 (1992) (fractured nose); *People v. Brown*, 199 Ill. App. 3d 860, 874 (1990) (broken collar bone); *People v. Caliendo*, 84 Ill. App. 3d 987, 993 (1980) (three fractured ribs); *People v. Rickman*, 73 Ill. App. 3d 755, 759-60 (1979) (broken ankle). Viewed in the light most favorable to the State, the evidence established that defendant's actions during the offense caused fractures to S.R.'s wrist and heel, that is, great bodily harm. Accordingly, defendant's contention that he was not proved guilty of aggravated criminal sexual abuse beyond a reasonable doubt fails.

¶ 52    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 53    Affirmed.