2020 IL App (2d) 170784-U
No. 2-17-0784
Order filed May 26, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-DT-305 |
| LAMAR M. MEAKENS, | ) ) | Honorable Paul A. Marchese, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State proved defendant guilty beyond a reasonable doubt of driving while having any amount of drugs in his breath, blood, other body substance, or urine (DUID): although defendant did not undergo chemical testing because he resisted arrest, the police officers detected an overwhelming odor of burnt cannabis on his breath and from his car, defendant was the only occupant of the car, and he gave nonresponsive answers to questions.

¶ 2    After a jury trial, defendant, Lamar M. Meakens, was convicted of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)) and driving while having any amount of a drug in his breath, blood, other body substance, or urine (DUID) (625 ILCS 5/11-501(a)(6) (West 2016)). He was acquitted of driving under the influence of alcohol (DUI) (*id.* § 11-501(a)(2)) and

battery (720 ILCS 5/12-3(a)(2) (West 2016)).  The trial court sentenced defendant to 12 months'

probation for resisting or obstructing a peace officer and imposed a 12-month period of supervision

for DUID.  On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt

of DUID.  We affirm.

¶ 3                                   I. BACKGROUND

¶ 4      At trial, Donald Krause, a Du Page County sheriff's deputy, testified on direct examination

as follows.  On February 4, 2016, at 8:20 p.m., he stopped a car for speeding.  Defendant was

driving and was alone.  His driver's-side window was rolled down an inch.  Krause approached.

As defendant reached for his license and insurance card, Krause put his nose up to the opening in

the window and smelled a strong odor of burnt cannabis coming from inside the car.  Krause could

distinguish the odors of fresh cannabis and burnt cannabis, based on his training and his

experience.  Defendant turned to give Krause his license and insurance card.  His eyes were

bloodshot and glassy, which indicated the influence of alcohol or drugs.

¶ 5      Krause testified that he told defendant that he had been speeding.  Defendant pointed to his

odometer and said that he was going to get an oil change.  Krause could not smell any odor of

alcohol; the odor of burnt cannabis was so overpowering that he could smell nothing else.  Krause

asked defendant whether he had any cannabis in the car.  Defendant said no.  Krause asked

defendant whether he or anybody else had smoked in the car earlier that day.  Defendant said no.

By this time, Deputy Fry had arrived and was standing behind defendant's car.  Krause went to

him and told him that he wanted to remove defendant from the car and search it for burnt cannabis.

¶ 6      Krause testified that he again approached defendant's car and asked him to step out.

Defendant responded that because he had a valid license and proof of insurance, he did not have

to step out.  Over the next three or four minutes, Krause and Fry asked defendant more than 20

times to exit the car, but he refused. At one point, defendant held up his cell phone, started videotaping, requested Krause's name and badge number, and asked what he was under arrest for. Krause identified himself. He told defendant that, at that point, he was not under arrest for anything but that, by refusing to exit his car, he was committing an offense: obstructing a peace officer. Krause then arrested defendant for that offense. Defendant did not exit but rolled up the window slightly.

¶ 7     Krause testified that Deputy Fox arrived, opened defendant's passenger-side door, and ordered defendant out. Defendant refused, so Fry pulled him out and ordered him onto the ground. Defendant refused. Fry and Krause tried together to force defendant to the ground, but defendant tensed up and part of his body hit Krause in the eye. Eventually, the deputies got defendant onto the ground. They handcuffed defendant, who immediately went limp. The officers called paramedics, who arrived and transferred defendant to an ambulance.

¶ 8     Krause testified that he and Fox searched the car. Krause saw that the ashtray within reach of the driver's seat held an inch-long rolled object that he knew from training and experience was a "blunt" containing cannabis. He put it up to his nose and smelled a strong odor of burnt cannabis. Krause knew that the blunt had been used, as it had ash and it was shorter than an unlit one. Krause packaged the blunt for evidence. He found nothing else of interest in the car. Krause drove to the hospital, where defendant refused to undergo breath, blood, or urine testing. Defendant was released into Krause's custody. Defendant was taken to a second hospital, discharged, and transported to the jail.

¶ 9     Krause testified on cross-examination as follows. When he followed defendant's car, he saw no swerving or violations other than speeding. Defendant pulled over appropriately and made no furtive or threatening gestures. Krause never smelled alcohol on his breath. Asked whether he

ever smelled cannabis coming from defendant's breath, Krause testified that it was hard to tell, because the window was barely open. Krause could say only that the odor was coming from the car. The deputies did not call for a K9 unit to conduct a drug sniff. The sheriff's office did not have a drug dog on patrol or, as far as Krause knew, at all.

¶ 10    Krause testified that defendant's car was registered to his mother. Krause had no idea when she or anyone else had driven it before that evening. When defendant was still inside the car, Krause did not get close to his face and could smell only burnt cannabis, not fresh cannabis. No field sobriety tests were performed on defendant.

¶ 11    James Greengard, a paramedic, testified as follows. He had seen people who were under the influence of alcohol and/or cannabis, and he was familiar with the smells of alcohol and cannabis on breath. When Greengard arrived at the scene, defendant had no obvious signs of injuries and his vital signs were within normal limits. His eyes were constricted and reactive to light, which could have been caused by certain drugs or bright light. Greengard detected the odors of both alcohol and cannabis on defendant's breath. The administration of Narcan helped defendant breathe. Narcan does not generally affect a person who is not under the influence of drugs. Greengard's report stated that his "primary opinion" was "possible drug overdose." The ambulance took defendant to the hospital.

¶ 12    Fry testified on direct examination as follows. When he approached the passenger-side door of defendant's car, the window was down about an inch. Fry immediately smelled a strong odor of burnt cannabis coming from inside the car. Fry went to the driver's side, where he and Krause both ordered defendant out. Fry testified consistently with Krause about their effort to remove defendant and subdue him on the ground.

¶ 13    Fry testified that he accompanied defendant into the ambulance and that, inside, he "did smell an odor of alcohol and an odor of cannabis coming from [defendant]."  Defendant's eyes were constricted, which, according to Fry's training, meant that he was under the influence of narcotics.  From his experience, Fry believed  that defendant had been drinking and had been under the influence of cannabis.  He based the latter conclusion on the strong odor of cannabis coming from defendant inside the ambulance.

¶ 14    On cross-examination, defendant asked Fry, "Now, also you testified that you smelled cannabis on [defendant's] breath while in the ambulance; that you smelled it, right?"  Fry responded, "Correct."  He then admitted that he had not recorded this fact in his police report.  Fry testified further that the deputies found no drugs or paraphernalia on defendant's person.  The deputies did not use a drug dog or check whether one was available nearby.  Fry testified on redirect that the sheriff's office did not have a drug dog.

¶ 15    The jury found defendant guilty of two counts of resisting or obstructing a peace officer and DUID.  The trial court merged the two resisting counts and sentenced defendant to 12 months' probation.  It imposed 12-months' supervision for DUID.  Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant challenges only the finding of guilt of DUID.  We note that, although a finding of guilt on a charge that results in a term of court supervision is not a final judgment, this court nonetheless has jurisdiction under Illinois Supreme Court Rule 604(b) (eff. July 1, 2017).  See *People v. Bozarth*, 2015 IL App (5th) 130147, ¶ 12.  Further, as the finding of guilt can have collateral consequences even if defendant completes his supervision successfully, the appeal is not moot.  *People v. Sheehan*, 168 Ill. 2d 298, 308 (1995).

¶ 18    Defendant argues that the State did not prove beyond a reasonable doubt that he had any amount of cannabis in his blood, breath, or urine while he was driving.  He acknowledges that two deputies testified that his car smelled strongly of burnt cannabis and its ashtray contained a partially-consumed blunt and that a paramedic testified that his breath smelled of cannabis.  Defendant notes, however, that he never underwent chemical testing and that, although the witnesses inferred that the odor and the blunt were linked to cannabis, no expert scientific opinion corroborated their testimony.  Further, he asserts, the remaining circumstantial evidence was minimally probative: he had been speeding, but his driving was not erratic, and he initially responded peacefully and coherently to the stop.  Defendant concludes that the case law does not allow a conviction of DUID under these facts.

¶ 19    In considering a challenge to the sufficiency of the evidence, we ask whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt.  *People v. Ward*, 154 Ill. 2d 272, 326 (1992).  The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence.  *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995).  It is not our function to retry the defendant.  *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 20    A survey of recent decisions, however, supports affirming the conviction.  In *People v. Briseno*, 343 Ill. App. 3d 953 (2003), the defendant was convicted of DUID.  The officer who stopped the defendant detected the odor of cannabis on his breath and in his vehicle; the defendant's speech was slurred, his pupils were dilated, and his motor skills were "slower than average"; and he told the officer that he had smoked marijuana in his vehicle just before driving

it. The appellate court held that the evidence was sufficient, irrespective of what field sobriety tests might have shown and without chemical analysis. *Id.* at 962.

¶ 21 Defendant relies primarily on *People v. McPeak*, 399 Ill. App. 3d 799 (2010) and *People v. Allen*, 375 Ill. App. 3d 810 (2007). In *Allen*, an officer conducting a roadside safety check told another officer that he smelled burnt cannabis coming from the defendant's car. The defendant was standing beside his vehicle. A second officer approached and noticed the smell of burnt cannabis coming from the car. He also smelled burnt cannabis on the defendant's breath. The defendant told the officers that he had smoked cannabis the night before. *Allen*, 375 Ill. App, 3d at 811-12.

¶ 22 The second officer, who testified at trial that his experience enabled him to recognize the smell of burnt cannabis, arrested the defendant for DUID. He did not direct him to perform field sobriety tests. He did not notice anything unusual about how the defendant walked or spoke, and he found no drug residue or paraphernalia inside the car. He conceded on cross-examination that a person's breath cannot indicate what amount of cannabis is in the person's blood. Asked whether he could tell with scientific certainty " 'if there's any cannabis in his breath outside of smell?,' " the officer testified, " 'I don't know if you can tell if there is anything in anybody's breath.' " *Id.* at 812-13. The trial court found the defendant guilty. *Id.* at 813.

¶ 23 The appellate court reversed. It held that the trial court properly admitted the second officer's testimony that he identified the smell of burnt cannabis on the defendant's breath, given that there was no chemical test and the "common knowledge" that burnt cannabis has "a distinctive smell." *Id.* at 815. However, the evidence was insufficient to prove that the defendant had driven with cannabis in his breath, urine, or blood. The court deemed crucial the officer's admission that

he could not tell whether there had been any cannabis in the defendant's blood or breath. *Id.* at 816.

¶ 24    In *McPeak*, the defendant was convicted of DUID. The officer who stopped his car smelled burnt cannabis " 'about [the defendant's] person' "; the defendant admitted to him that he had " 'taken two hits out of a hitter box' " about an hour earlier; and in his car was a pipe containing a burnt substance that smelled like cannabis and later field-tested positive for cannabis. *McPeak*, 399 Ill. App. 3d at 800-01.

¶ 25    This court reversed. We distinguished *Briseno* by noting that in *McPeak*, there was no evidence that smoking "two hits" of cannabis an hour before the stop would have left any drug in the defendant's blood, breath, or urine, and there was no evidence that he was impaired or had a cannabis odor on his breath (as opposed to "about his person"). *Id.* at 802. We followed *Allen* "to the extent it holds that such circumstances are too tenuous to show that there was cannabis in the defendant's blood, breath, or urine." *Id.* However, we noted that evidence of the odor of cannabis on a defendant's breath "could provide circumstantial evidence that the defendant has cannabis in his breath." *Id.*

¶ 26    In *People v. Kathan*, 2014 IL App (2d) 121335, we affirmed a conviction of DUID, partly based on such circumstantial evidence. The officer observed the defendant's car weaving in its lane and crossing over the fog line. After he stopped her and requested identification, she " 'frantically looked' " for her driver's license and could not find it even though it was plainly visible in her wallet. After the officer directed her to exit the car, he asked her about some damage to the car's front right bumper; she gave a vague answer. The defendant failed several field sobriety tests. She spoke incoherently and there was an odor of alcohol, although the officer could not determine its source. He arrested her for driving under the influence of alcohol. At the police

station, she told the officer that she had taken prescription medication: two Xanax pills, one recently before she started driving, and a Vicodin pill. She took a blood alcohol content test that revealed no alcohol in her system, but she refused all other chemical testing. *Id.* ¶¶ 3-8.

¶ 27    In holding that the circumstantial evidence was sufficient, we cited (1) the defendant's admission that she had taken three prescription pills, one recently before driving; (2) her high level of impairment, as shown by her erratic driving, inability to locate her license when it was in plain sight, incoherent speech, inability to explain the damage to her car, and poor performance on the field sobriety tests. *Id.* ¶ 21.

¶ 28    Finally, in *People v. Castino*, 2019 Il App (2d) 170298, we affirmed a conviction of DUID. An officer and a detective stopped a car that was driving extremely slowly and from which the passenger had discarded several items. The defendant, the driver, had red constricted eyes, fresh and old track marks on his arms, and noticeable swelling in his arms and hands. There was a white powdery substance in his right nostril and his shirt had a dry blood-like stain. *Id.* ¶ 3-5. The officer testified that, based on his experience, these indicated narcotics use. *Id.* ¶ 6. A hypodermic needle, which the defendant admitted was his, was in the pocket of the driver's-side door. The defendant admitted using drugs a few hours earlier. On his person were items that, in the officer's experience, were consistent with a drug kit; there were hypodermic needles in the car; and the passenger possessed bags of what later tested positive for heroin. *Id.* ¶¶ 7-8. The defendant failed several field sobriety tests. *Id.* ¶¶ 9-10. At the police station, he refused chemical testing. The items that the passenger had discarded included material that the officer recognized as used to cook heroin before use. *Id.* ¶ 12. The officer testified over objection that, in his opinion, the defendant had been under the influence of heroin. *Id.* ¶ 11.

¶ 29    The trial court granted the defendant a directed finding on DUI, holding that there was insufficient evidence of impaired driving. The court found him guilty of DUID. *Id.* ¶ 14. We affirmed. We noted that the DUID charge did not require expert testimony; circumstantial evidence could be sufficient even without opinion testimony by the arresting officer. *Id.* ¶¶ 19-20. We concluded that the circumstantial evidence was "ample." *Id.* ¶ 22.

¶ 30    We turn to the present case. The circumstantial evidence, viewed in the light most favorable to the prosecution, appears to be weaker than in *Castino*, *Kathan*, and *Briseno* but stronger than in *McPeak* and *Allen*. We conclude that it was sufficient.

¶ 31    Defendant is correct that the State presented limited evidence that he was impaired. Aside from speeding, which did not in itself strongly suggest recent drug use, defendant committed no traffic infractions. Defendant disobeyed the officers' orders, but appeared to understand what they told him and responded intelligibly without slurring his speech. Although defendant vigorously resisted the attempt to restrain him, there was no evidence of the impaired motor skills that were present in *Castino*, *Kathan* and *Briseno*. Of course, there were no field sobriety tests here.

¶ 32    On the other hand, evidence of impairment suggesting recent drug use was not entirely lacking. When Krause told defendant that he was being stopped for speeding, defendant said that he was planning to get his oil changed and pointed to his odometer. As Krause noted, this response had nothing to do with Krause's statement. It bore some resemblance to the curious responses to the officer by the *Kathan* defendant.

¶ 33    Defendant's conduct in resisting the officers vigorously was also some evidence, albeit indirect, that he had cannabis in his breath. The jury could infer that by refusing to exit the car, tensing up and flailing at the officers, then going limp, defendant was fiercely resisting getting arrested and taking a field sobriety test or even giving the officers an opportunity to observe his

gait. The jury could infer that defendant knew that he had consumed cannabis very recently and did not want the officers to find it out. As very recent consumption is probative of DUID, the effort to hide evidence of the former is probative of the existence of the latter.

¶ 34 Further, during oral argument, defendant conceded that his extreme resistance to the officers' attempts to control him could also be taken as evidence of intoxication. As the evidence that alcohol was the intoxicating agent was very weak, it follows that the jury could consider his extreme measures as evidence that he was intoxicated *by cannabis*. That, in turn, was circumstantial evidence that he had some amount of cannabis in his blood, breath, or urine.

¶ 35 We acknowledge that, unlike the defendants in *Castino*, *Kathan*, and *Briseno*, defendant did not admit very recent drug use. He did, however, deny that anybody else had used cannabis in his car, and he was alone. Although defendant also denied that he had used cannabis in his car, the jury could credit the first denial as an admission against interest and discredit the second one as self-serving.

¶ 36 Stronger than either observed impairment and admissions were the physical, visual, and olfactory evidence. Defendant's eyes were bloodshot and glassy (according to Krause) and constricted (according to Greengard and Fry) and reactive to light (according to Greengard). There was testimony that these symptoms indicated alcohol or drug use. Although some of this testimony was ambiguous as to which condition was indicated, Fry specifically linked constricted eyes to drug use. Moreover, Greengard testified that defendant reacted positively to Narcan, which normally does not affect a person who is not under the influence of drugs.

¶ 37 Further, the olfactory evidence of very recent cannabis use was considerable. First, Greengard testified that, in the ambulance, he smelled an odor of cannabis on defendant's breath. Fry's testimony was more ambiguous. But even taking Greengard's statement alone, it is stronger

than the officer's statement in *McPeak* that he merely smelled burnt cannabis " 'about [the defendant's] person.' " *McPeak*, 399 Ill. App. 3d at 801. The statute criminalizes driving with cannabis in one's breath, but not about one's person. The court in *McPeak* did not hold that an officer's testimony about what he smelled on a defendant's breath can never be probative of DUID.

¶ 38    Second, even before defendant entered the ambulance, the olfactory evidence was considerable. Even with the driver's-side window almost completely rolled up, both Krause and Fry smelled burnt cannabis. Krause described the smell as overpowering. Admittedly, there was no direct evidence of when this odor started and no testimony about how long a strong cannabis odor takes to dissipate. However, the existence of this extremely strong odor was certainly evidence that cannabis had been consumed very recently inside the car, and only defendant had occupied the car when Krause pursued and stopped it.

¶ 39    Finally, the physical evidence that defendant had consumed cannabis while he was driving (thus allowing an inference that some amount was in his blood or breath) was limited but strong. In the ashtray placed for the driver's use was a blunt that had been consumed, as it smelled of burnt cannabis, contained ash on the smoker's end, and was shorter than the unused blunts that Fry had encountered in his experience. The most reasonable inference from this evidence was that the blunt had been smoked during the ride that ended with the stop of the unaccompanied defendant, and not during some previous use of the car. The jury could reject the theory that, when defendant started driving, he knew that there was a partially-consumed cannabis cigarette within his reach yet did not disturb it, such as by disposing of it, which would have promoted both cleanliness and avoiding criminal liability for a previous act that had already served its pleasurable purpose. That no drug paraphernalia was found in the car meant nothing, because no further materials were needed for defendant to ingest cannabis.

¶ 40 Even if no individual item of evidence was necessarily sufficient to prove defendant's guilt beyond a reasonable doubt, the jury could reasonably conclude that all of the evidence did so. Therefore, the finding that defendant was guilty of DUID must stand. As defendant raises no other challenges to the judgment, it must be affirmed.

¶ 41                                    III. CONCLUSION

¶ 42 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 43 Affirmed.