2019 IL App (2d) 170626-U
No. 2-17-0626
Order filed November 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-175 |
| DONNIE J. REED, | ) ) | Honorable Michael P. Bald, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State produced sufficient proof of the *corpus delicti* of sexual exploitation of a child, as the State corroborated defendant's confession with the victim's statement and another witness's testimony about the victim's behavior.

¶ 2    After a bench trial, defendant, Donnie J. Reed, was convicted of sexual exploitation of a child (720 ILCS 5/11-9.1(a)(2) (West 2014)) and sentenced to 30 months' probation and 6 months' jail.  On appeal, he contends that he was not proved guilty beyond a reasonable doubt, because the State failed to corroborate his extrajudicial admissions.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State filed a 13-count indictment against defendant. Counts I charged predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1) (West 2014)) and count II charged criminal sexual assault (*id.* § 11-1.20(a)(3)), based on separate acts of sexual contact committed between September 18, 2011, and March 10, 2014, against his daughter A.R. Counts III through XI charged sexual exploitation of a child, based on separate acts of exposing his penis to A.R. between September 18, 2011, and March 10, 2014. Counts XII and XIII charged sexual conduct with an animal (*id.* § 12-35(a)), based on acts allegedly committed between September 18, 2011, and March 10, 2014.

¶ 5    Defendant's trial was held in January and February 2017. We summarize the evidence.

¶ 6    On direct examination, A.R. testified as follows. She was six years old. Jennifer Weipert was her mother. A.R. once went to the Wisconsin Dells with defendant and saw Weipert's friend Heather Lestikow there, but she could not remember the date(s). Asked whether she remembered telling Lestikow about defendant's "pee-pee [penis] being out," she testified, "Yeah." Asked whether she remembered what she had told Lestikow "about that," A.R. testified, "No." Asked next whether she remembered telling Lestikow that she "didn't like sitting on [defendant's] lap," A.R. testified that she did not. Asked whether she remembered telling Lestikow anything about defendant's "pee-pee being out," A.R. testified, "No."

¶ 7    A.R. testified that she remembered going to a place in Stockton and talking to a woman, but she could not remember what she said. The prosecutor redirected her attention to when she told Lestikow about seeing defendant's "pee-pee" out. He asked, "[D]id you see it, did you feel it or anything like that?" A.R. responded, "No." The prosecutor asked, "[Y]ou do remember telling her that though?" A.R. responded, "Yes."

¶ 8    A.R. testified that, at the Dells, she stayed in a motel with defendant, her grandmother, and Lestikow. She could not recall whether her brother, C.R., had been there. A.R. could not remember why she told Lestikow about defendant's pee-pee being out. She testified that she did not like defendant's pee-pee being out.

¶ 9    On cross-examination, A.R. said that she remembered telling Lestikow that defendant's pee-pee came out once, but she did not see it or feel it. Asked how she knew that it was out, she testified, "I think I felt it." A.R. could not remember defendant ever touching her with his pee-pee. She felt safe around him.

¶ 10    Weipert testified as follows. She had three children, including two, A.R. and C.R., by defendant. A.R. was born April 18, 2010. Defendant and Weipert had lived together for 10 years, originally in Freeport but moving to Red Oak when C.R. was two or three. Lestikow recently told Weipert that she had stopped seeing defendant and would give the authorities certain photographs that he had taken.

¶ 11    Richard Roodhouse, a Stephenson County sheriff's deputy, testified that on March 5, 2014, Lestikow showed him cell phone messages that she and defendant had exchanged and a photograph that he had sent her, all on the day that she visited him at the Dells. Roodhouse photographed the messages and picture. Roodhouse reported the matter to the Department of Children and Family Services (DCFS).

¶ 12    Carmine DeStefano, a child-protection specialist with DCFS, testified as follows. On March 10, 2014, she and Sergeant Donovan Visel of the Stephenson County sheriff's department interviewed defendant. DeStefano asked defendant about the photographs he had taken on his trip to Wisconsin in February 2014. Defendant said that he took photographs of his private part because his girlfriend, Lestikow, had requested them. He took the pictures with his phone and sent

them to Lestikow. While he did so, A.R. and C.R. were seated on the bed with him. He was under a blanket, and they did not see him taking the pictures.

¶ 13    DeStefano testified that she told defendant that, during her investigation, A.R.'s mother and grandmother had related that A.R. had said that she did not want to visit him. Defendant said that he was unaware of that. DeStefano asked defendant whether A.R. had made her statements because she did not want to see his penis. He responded that he had never exposed his penis to A.R. He said that she would sometimes sit on his lap and that once he accidentally let her see his penis when his pajamas were open. Asked whether he had ever touched A.R.'s vaginal or anal area, defendant said that once, after he took her out of the bath, he placed his erect penis on her vagina and photographed it on his phone. He was at his home in Illinois when he did this. He soon regretted it and deleted the photograph.

¶ 14    DeStefano testified that defendant then admitted that he had exposed himself to A.R. possibly nine times "from when she was about a year old, year and a half old, and up to the current time at that time when she was about three."

¶ 15    Defendant also told DeStefano that he had masturbated in his dogs' presence and had them lick his penis after he climaxed.

¶ 16    Lestikow testified as follows. In March 2014, she was dating defendant. That month, he asked her to drive to the Dells and meet him and his family. On the ride up, she received a text message from him saying that A.R. had seen him take pictures of his penis. Defendant sent one photo of his exposed penis; the children were in the background, but their eyes were not turned toward him. He texted that A.R. had seen his penis but C.R. had not.

¶ 17    Lestikow testified that she met defendant, C.R., and A.R. at the motel. Although she had never met A.R. before, the child stayed by her side almost the whole time that Lestikow was there.

On Saturday evening, Lestikow helped A.R. take a bath. When A.R. was in the tub, she told Lestikow that she did not like sitting on defendant's lap, because he showed her his pee-pee. Lestikow did not know how to respond and "did not really address it or question [A.R.]."

¶ 18    Visel testified that DeStefano asked defendant about the photograph from the Dells that showed his penis under the bedclothes as the children lay next to him. Visel testified consistently with DeStefano that defendant admitted touching A.R.'s vagina with his penis at home in Illinois. Defendant admitted that he had exposed himself to A.R. nine times at their home and once at the Dells. He conceded that exposing himself excited him sexually.

¶ 19    Visel testified that A.R. had been interviewed at Tyler's Justice Center in Stockton and had not disclosed any abuse. She did not mention any of the incidents that defendant had described to DeStefano and Visel.

¶ 20    The State rested. Defendant moved for a directed finding. The court granted the motion only as to the two counts of sexual conduct with animals, noting that no evidence corroborated defendant's admissions to DeStefano and Visel. Thus, the State had not proved the *corpus delicti* by independent evidence. The court denied the motion as to the other charges.

¶ 21    Defendant called Jacqulyn Martin, who testified as follows. She was a child-protective investigator for DCFS and had previously worked at Tyler's Justice Center. There, on March 14, 2014, she interviewed A.R. Martin had no independent recollection of the interview. A tape of it was played at trial. In the interview, Martin asked A.R. whether she had ever touched someone's "wiener." A.R. said no. Asked whether she had ever seen anyone's wiener, she said no. Asked whether she had ever seen anyone's pee-pee before, she said no.

¶ 22    After arguments, the trial court stated as follows. First, other than defendant's statements to DeStefano, there was no evidence to support counts I and II. A.R. did not testify that defendant's

penis had ever touched her. Further, the incident in Wisconsin was irrelevant, as it happened in a foreign jurisdiction. Thus, defendant was not guilty of counts I and II.

¶ 23 The court turned to the remaining counts, all of which charged sexual exploitation of a child based on defendant having exposed his penis to A.R. The court initially observed that defendant had admitted to DeStefano and Visel that he had done so numerous times and that his purpose had been his sexual gratification. However, the law requires more than a defendant's confession, admission, or out-of-court statement to prove the *corpus delicti* of an offense. See *People v. Lara*, 2012 IL 112370, ¶ 17. The court noted that the independent evidence need only tend to show the commission of a crime and that it may be considered together with the confession to determine whether the State has sufficiently established the *corpus delicti*. *Id.* ¶ 18.

¶ 24 The court held that the State had done so as to one act of sexual exploitation of a child. The court reasoned as follows. Defendant had made his confession while being confronted with a copy of the photograph from Wisconsin, reducing the chance that a confession to another offense was false. Further, A.R. had told Lestikow that defendant had shown her his pee-pee. A.R. had testified that she had made "some statement to Lestikow about [defendant's] pee-pee being out but [did] not remember what she had said, except that she had acknowledge[d] *** that, quote, Daddy's pee-pee came out one time, end quote." The court concluded that Lestikow's testimony was credible when "consider[ed] *** with all the other evidence presented." Thus, the *corpus delicti* of one offense, which the court designated count IV, had been proved. Count III was based on the Dells incident, and the evidence of the other counts was insufficient.

¶ 25 The court denied defendant's motion for a new trial and later sentenced him to 30 months' probation and 6 months of jail. He timely appealed.

¶ 26                                    II. ANALYSIS

¶ 27　　On appeal, defendant contends that his conviction must be reversed because the State failed to satisfy the *corpus delicti* rule. Defendant argues that, aside from his confession, there was no evidence that he exposed himself to A.R. on any occasion. He asserts that A.R.'s statement to Lestikow was unreliable and that A.R. told Martin that no such exposure ever occurred. Given the deference that we must accord the trial court as fact finder, we hold that any weaknesses in the evidence were not crucial and that the State satisfied the *corpus delicti* rule. Therefore, we affirm.

¶ 28　　In reviewing the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). We may not retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 29　　We note, however, that Illinois still follows the rule that the State must prove both (1) the *corpus delicti*, *i.e.*, that a crime occurred, and (2) that the defendant committed it, and that proof of the *corpus delicti* may not rest exclusively on the defendant's extrajudicial confession, admission, or other statement. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). The independent evidence need not prove the existence of the crime beyond a reasonable doubt. *Id.* It may be considered together with the confession to determine whether the existence of the crime, and that the defendant committed it, have been proved beyond a reasonable doubt. *Id.* However, the independent evidence must tend to prove that the defendant committed the offense of which he was convicted, and not a different one based on a separate act. See *id.* at 184-85 (evidence that

defendant anally penetrated two victims did not corroborate admission that he fondled penis of first victim).

¶ 30　Here, the trial court found defendant guilty of one act of exposing his penis to A.R. in his home in Illinois. Defendant confessed to DeStefano and Visel that, between when A.R. was about 1 to 1½ years old and the time of the interview, when she was 3 years and 11 months old, he had on nine separate occasions exposed his penis to her for purposes of his sexual gratification. Although he had just spent a weekend with A.R. in Wisconsin, they lived in Illinois. Thus, although the date of the act on which the court based the conviction was not established with precision, it was fairly inferable (viewing the evidence in the light most favorable to the State) that it happened very shortly before the Wisconsin trip.

¶ 31　The trial court recognized that defendant's admission to the offense was insufficient to prove his guilt (and that his admission to committing a similar offense in Wisconsin did not prove his guilt of any charged offense, for obvious reasons). The court found corroboration, however, in A.R.'s statement to Lestikow that she did not like sitting on defendant's lap, because he showed her his pee-pee. According to the court, A.R.'s statement (which Lestikow recalled clearly although A.R. did not) corroborated defendant's admission that he had exposed himself to A.R. at least once when they were in Illinois.

¶ 32　Defendant attacks the strength of this corroboration in several ways, noting that the statement was hearsay and that Lestikow testified to it as defendant's alienated former girlfriend. These attacks are misguided, however, as determining the credibility of the witness and the weight to accord her testimony was within the trial court's prerogative and, as a court of review, we must view the evidence in the light most favorable to the State. The real issue, therefore, is whether,

viewed in this favorable light, Lestikow's testimony sufficiently corroborated defendant's admission to establish proof beyond a reasonable doubt.

¶ 33   In confronting this issue, we recognize the potential inconsistency between the *Jackson* standard and the requirement that the *corpus delicti* be corroborated by independent evidence. Theoretically, a bare confession might be sufficient for a reasonable fact finder to conclude that the elements of the charged offense have been proved beyond a reasonable doubt.  We are not the first court to recognize this potential tension.   Indeed, for essentially this reason, several jurisdictions have abolished the corroboration rule.  See *Lara*, 2012 IL 112370, ¶ 87 (Thomas, J., specially concurring).  However, the rule remains in effect in Illinois.  See *id.* ¶¶ 18-19 (majority opinion).  Thus, we shall apply it, recognizing the potential illogic of holding that proof beyond a reasonable doubt requires corroboration of evidence that already establishes proof beyond a reasonable doubt.   The foregoing discussion suggests that the corroboration rule is not a particularly stringent one.

¶ 34   Here, we conclude that the independent corroboration of defendant's admission was sufficient, if minimally so. A.R.'s statement to Lestikow could reasonably be interpreted to imply that defendant had exposed his penis to the child more than once, which was why she did not want to sit on his lap.  Further, her statement was consistent with defendant's admissions to DeStefano and Visel, including not only his confession to exposing himself to A.R. but also his earlier attempt to meet her allegation by theorizing that he might have inadvertently exposed himself while she sat on his lap. Lestikow's testimony that A.R. stuck by her side and avoided defendant could also be taken as some evidence that defendant had engaged in acts of indecent exposure to her that preceded the one that he had photographed that weekend.

¶ 35    We grant that the evidence to corroborate defendant's admission was neither extensive nor uncontradicted.  Nonetheless, the court as fact finder did not err in holding that it satisfied the *corpus delicti* rule and that defendant had been proved guilty beyond a reasonable doubt.

¶ 36                                        III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Stephenson County.

¶ 38    Affirmed.