2020 IL App (2d) 170300-U
No. 2-17-0300
Order filed September 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1317 |
| IGNATIUS M. POLLARA, | ) ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Evidence was insufficient to prove that defendant stole art pencils from a particular store, where (1) a detective witnessed defendant place an item from the art-supply aisle of the store under his shirt but could not identify what it was; (2) the items recovered from defendant's car were not unique to that store, and there was evidence that defendant might have stolen the same brand of art pencils from other stores; and (3) evidence of store procedures did not—as the trial court mistakenly believed—establish that inventory was taken shortly before defendant's alleged theft.

¶ 2     After a bench trial, defendant, Ignatius M. Pollara, was convicted of two counts of burglary

(720 ILCS 5/19(a)(1) (West 2014)) and three counts of retail theft (*id.* § 16-25(f)(2)).  On appeal,

he contends that the State failed to prove him guilty beyond a reasonable doubt of one count of retail theft. We affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4      The State indicted defendant on 10 charges, one of which (count V) was dismissed before trial. All the alleged offenses were committed on July 3, 2015. Specifically, defendant was charged with burglary (count I) and retail theft (count II) at a Hobby Lobby in Lombard; burglary (count III) and retail theft (counts IV and V) at a Crate & Barrel in Oakbrook; burglary (count VI) and retail theft (count VII) at a Carson's in Lombard; burglary (count VIII) and theft (count IX) at an Office Depot (a/k/a Office Max) in Lombard; and the foregoing retail thefts (count X), committed in furtherance of a single intent and design (*id.* §§ 16-25(f)(2), 111-4(c)). Count IX, the only one directly at issue in this appeal, alleged that, on or about July 3, 2015, defendant "knowingly took possession of *** various art pencils with the intention of depriving the merchant, Office Depot, permanently of the possession of such merchandise without paying the full retail value of such merchandise."

¶ 5      Defendant was convicted of counts I, II, VIII, and IX and sentenced to concurrent prison terms of five years for the burglaries and three years for the thefts.

¶ 6      Defendant appeals only his conviction of count IX. However, the other counts are crucial to understanding his claim of reasonable doubt, so we shall set out the pertinent evidence relating to them. Additionally, for context, we shall note the evidence relating to July 2, 2015, when defendant allegedly committed a series of burglaries and retail thefts in Cook County.

¶ 7      The State's first witness, Jeremy Thayer, testified on direct examination as follows. On July 1, 2015, he was an investigator for the Downers Grove Police Department. He learned that

defendant would arrive from Florida to commit retail thefts in the suburbs. Thayer assembled a surveillance team. The next day, the team went to O'Hare International Airport.

¶ 8       Thayer testified that on the afternoon of July 2, 2015, he learned that defendant had arrived at the airport and had rented a black Buick SUV. At about 3:15 p.m., Thayer followed the SUV to Schaumburg. At about 6:45 p.m., defendant entered an Office Depot on Golf Road. Thayer watched from the parking lot. Defendant exited and, in quick succession, visited Bed Bath & Beyond, Hobby Lobby, Michael's, and Home Goods, all in Schaumburg as well. While defendant was inside Home Goods, Thayer attached a GPS tracker to the SUV. After leaving Home Goods, defendant visited Barnes & Noble and buybuy BABY in Schaumburg, then Barnes & Noble in Oak Brook. At about 10 p.m., he drove to the Hilton Suites in Oakbrook Terrace. Thayer ended the day's surveillance.

¶ 9       Thayer testified that surveillance resumed on July 3. At about 9:50 a.m., defendant entered an Office Depot in Oak Brook. Next, he drove to the Oak Brook Mall and stopped at the Disney Store and Crate & Barrel. Defendant drove to the Westin Hotel in Lombard and entered. At about 12:15 p.m., he exited and drove a few hundred yards to Yorktown Center in Lombard. He entered the mall, as did Thayer. Other team members were there. Defendant visited Carson's, Amy's Hallmark, and Brighton Toys, purchasing or otherwise obtaining items that the team later recovered from his SUV.

¶ 10      Thayer testified that next, defendant drove to Jo-Ann Fabrics in Lombard. Defendant then visited the Office Depot nearby; Thayer followed him in. Defendant walked around, looking up and at other people. He entered the aisle that held high-end art supplies, including pencils, markers, and paints. Thayer stood behind a center display. He saw defendant take something from the aisle and, with one smooth motion, place it into the small of his back. Thayer could not tell what the

item was. Defendant left the aisle. He picked up a poster board, put it down, then took a composition pad priced at $1.99 and purchased it. He left the store.

¶ 11　Thayer testified that he then spoke to the store manager, Edward Kost. He received no documents from Kost at that time. Later, after the search of defendant's SUV following his arrest, Kost gave Thayer People's exhibit No. 24, a list of the types of recovered items that had come from Office Depot, along with their prices. Also retrieved from the SUV were seven packages: People's exhibit Nos. 5-A through 5-D, four packages of "Prismacolor 24-count professional artist pencils"; People's exhibit Nos. 5-E and 5-F, two packages of "Prismacolor 36-count professional artist pencils"; and People's exhibit No. 5-G, one package "Prismacolor premier 12-count art markers." The packages in People's exhibit Nos. 5-A through 5-G were still shrink wrapped. They did not have any tags indicating their store(s) of origin.

¶ 12　Thayer testified that he next saw defendant at about 1:55 p.m., when the latter drove to the Hobby Lobby in Lombard. Thayer was in the parking lot and assigned Dennis Dixon to observe defendant inside the store. Thayer identified People's exhibit No. 17-I as a receipt for a 71-cent package of construction paper that was found in defendant's SUV. There was another package of construction paper with a price tag for $1.43 (People's exhibit No. 1-Q).

¶ 13　Thayer testified that, after defendant exited the store, several team members arrested him. Searching defendant, officers retrieved, from the small of his back, a 36-count set of Prismacolor premier art pencils (People's exhibit No. 14-A); an art brush (People's exhibit No. 14-B); and a painting knife (People's exhibit No. 14-C). These all had price tags marked "Hobby Lobby."

¶ 14　The officers then searched the SUV. Items seized included, among many others, a three-pack of color markers (People's exhibit No. 13) with no identifying tags. Thayer identified People's exhibit No. 15 as a 23-count package of Prismacolor Manga colored pencils and a 24-

count package of Derwent artist pencils. The cellophane on the Prismacolor package was unbroken. Thayer identified the five items in People's exhibit Nos. 16-A through 16-E. The first three were two Prismacolor Manga art markers and a Prismacolor fine line marker. People's exhibit Nos. 16-D and 16-E were a Bob Ross paint brush and a Bob Ross paint knife. People's exhibit Nos. 16-A through 16-D had no tags to show the store(s) of origin. People's exhibit No. 16-E had a piece of paper stuck to it; its size, shape, and color were consistent with the tags from the Hobby Lobby. The team found no receipts or other evidence of purchase for any art pencils or markers.

¶ 15    Thayer testified that, after the arrest, defendant agreed to an interview. Thayer told defendant that, in the Lombard Office Depot, he saw him conceal an item behind his back. Defendant disbelieved him, stating that the poster board blocked his view. Defendant said that he would not show up on the surveillance tape because he knew the store camera's dead areas.

¶ 16    Thayer testified on cross-examination as follows. He had identified some items as coming from Office Depot, but he could not recall anything on any item showing from which Office Depot it came. His police report stated that he had recovered seven art supply items from Office Depots, having a total value of $265.93, but also stated, " '[W]e could not determine how many were taken from which individual Office Depot/Office Max that [defendant] entered between July 2nd and July 3rd.' " However, Kost had told him that "his inventory was low by a specific number," so Thayer "attributed that specific number to the Lombard store's loss." Kost said that the store "was missing a specified number of items from that particular aisle."

¶ 17    Thayer testified that seven Prisma brand items were recovered from the SUV. Asked, "Which of the seven items did you conclude came from the Lombard Office Depot?," Thayer testified, "You would have to give me my report to refresh my memory. But Mr. Kost indicated

that he was missing at least ten items in that aisle that [defendant] was in in the art pencils [*sic*]." Asked about the discrepancy between the number reported missing and the number found in the SUV, Thayer testified that it was possible that defendant "stole at least seven because he was in possession of seven and the Lombard store was missing ten items." The testimony continued:

"Q. Okay. And it's possible that he took none of them from the Lombard store and that somebody—some other reason caused them to go missing from the Lombard store, right?

A. No, that is not possible. I observed him hide items behind his back.

* * *

Q. Well, all right. But you didn't observe him hide—you were not able to see and identify the specific item that you saw him hide; is that correct?

A. No, I can't tell you exactly which item he hid behind his back.

Q. All right. So it may or may not have been these art supplies that you located in the SUV; is that correct?

A. There were no other items though from Office Depot located in the SUV that were stolen from the Office Depot.

Q. You found items that you couldn't tell where they came from, didn't you?

A. Well, they didn't come from the Office Depot, though.

Q. You don't know that, do you?

A. Well, yeah. We asked the Office Depot if they carried [the specific items that could not be attributed to a store] and they don't."

¶ 18    Thayer testified that he saw defendant put something behind his back. Defendant was not wearing a backpack and nothing fell to the ground. After defendant left the store, Thayer spoke to

Kost and received the store's surveillance video. From the SUV, the team recovered receipts from Office Depots in Schaumburg, Oak Brook, and Lombard. Thayer did not know whether Prisma markers and pencils were sold at Jo-Ann Fabrics and Michael's.

¶ 19    On redirect, Thayer testified that People's exhibit No. 15, the 23-count Prisma Manga and Derwent pencils, could not be attributed to a particular store. People's exhibit Nos. 16-A, B, and C, other Prismacolor pencils and markers, could not be attributed to a particular store.

¶ 20    On recross-examination, defendant asked whether Thayer had determined that all seven Prismacolor sets in People's exhibit No. 5 came from the Lombard Office Depot. Thayer responded that "according to Mr. Kost[,] out of the ten items he was missing those seven items were a match." Asked whether "[Kost] was able to tell by looking at these items that these items came from his store," Thayer testified, "And by searching his inventory probably of the items that were supposed to be sold and what was on the shelf." Kost looked at all the items, one at a time. Thayer went with Kost to check the inventory. Kost "stood at the aisle [and] used an electronic device to check to see what was available and what was supposed to be there." Thayer did not know how often Office Depot in Lombard checked its inventory.

¶ 21    David Clark, a detective sergeant with the Oakbrook Terrace Police Department, testified consistently with Thayer about defendant's actions on July 2, 2015. He testified that on July 3, defendant entered Jo-Ann Fabrics in Lombard. Clark followed him in. He saw defendant standing "over in the aisle near what [Clark] described as like the arts and crafts, writing utensils, and things like that." Defendant walked to the end of the aisle, where there was a merchandise display and Clark could not see him. Clark also saw defendant look around regularly, sometimes at merchandise and sometimes "just scanning the store." He did not see defendant purchase anything.

¶ 22    Clark testified that, after the arrest, he helped to search defendant.  At one point, defendant's shirt was lifted up.  There were "items in the small of his back, and *** there may have been an item or two in the front of his waistband, as well."  Clark identified People's exhibit Nos. 14-A, B, and C as having been seized from the waistband.

¶ 23    Nicole DeMario, an Oakbrook Terrace police officer and a member of the surveillance team, testified as follows.  On July 2, 2015, she followed defendant into the Office Depot in Schaumburg.  Defendant was in "the arts and crafts section of the store where markers were and stuff."   The aisle where he stood included art pens and pencils.  His eye level was above the merchandise.  Defendant dropped something behind a shelf and bent over to pick it up.  He purchased something at the register and exited.  DeMario did not notice which brands of art pens and pencils were sold at that location.

¶ 24    Kost testified on direct examination as follows. Inventory was taken at his store every Monday, Tuesday, Thursday, and Saturday.  When there were three or fewer of a product on a peg, an employee used a scan gun to check whether there were the expected number in back stock; if not, an adjustment (write-off) was made.  When an item was sold, it automatically came out of the inventory.  For example, if a scan showed that there were supposed to be four items on a hook and one was sold that morning, the scan automatically showed three items.  July 2, 2015 was a Thursday, so an employee completed an inventory that day.

¶ 25    Kost identified People's exhibit No. 17-H as a receipt for $2.15, representing a $1.99 pad plus $0.16 tax.  Shortly after defendant purchased the pad, Thayer spoke with Kost.  As a result, Kost went to the "higher end markers and pencils, colored pencils and markers."  After reviewing the inventory at that location, he concluded that "[t]here was a number of items missing."  He

based the conclusion on "sales for the day and the inventory, what the inventory level should have been in our system." Kost determined that nine items were missing from the location.

¶ 26    Kost identified the items in People's exhibit Nos. 5-A through 5-G as higher-end colored pencils and markers that Thayer gave him at a later date to examine. By scanning the bar codes, Kost determined that the items came from Office Depot. However, although he "believe[d]" that the bar code was unique to Office Depot, he could not say "a hundred percent for sure." He printed out a receipt for their total value (People's exhibit No. 24), which was $265.93 before tax.

¶ 27    Kost testified on cross-examination that the bar codes told him that Office Depot sold the items but not which Office Depot a particular item came from. An employee performed an inventory only when three or fewer items were left on a hook (or in a stack). Thus, for example, had there been more than 10 of a type of item in a stack on June 30, 2015, nobody would have inventoried that stack. Therefore, Kost did not know when before July 2, 2015, an inventory had been performed on the high-end colored pencils and markers. Inventories are performed during business hours. An item might be removed from a hook or a stack without being sold or stolen, such as when a customer inadvertently returns it to the wrong place. A bar code will disclose that a given type item is sold by Office Depot, but it does not rule out the possibility that it is sold by another retailer.

¶ 28    Kost testified that People's exhibit No. 24, the receipt that he printed out for the items Thayer showed him and that were later included in People's exhibit No. 5, was printed out on July 7, 2015. The inventory was performed on July 2, 2015. Had there been more than three items on a hook or in a stack on that day, the inventory would not have been performed on them. Kost acknowledged that four of the items in People's exhibit No. 5 were 24-count packages of Prismacolor colored pencils. Two of the items in People's exhibit No. 5 were 36-count sets of

Prismacolor pencils. Kost did not recall how many of these had been on the shelf. One item in the exhibit was a 12-count Prismacolor set. On July 2, 2015, one was left on the shelf. An inventory would have been done on this stack two days earlier; there had not been any recent adjustment made. On all the items he checked, there had not been a recent adjustment: nobody had recently noted either that there were fewer than three of the item or that there were fewer than three but that sales could not account fully for the number.

¶ 29    Kost testified that nine items had been missing at the location from which the items in People's exhibit No. 5 came. He told Thayer that there were items missing from the location, but he could not recall whether he said "nine" or "ten or more." The examination continued:

"Q. You can tell precisely when something went missing from your store when you do your inventory; is that your testimony?

A. That is correct.

Q. Okay. Precisely, when were these items missing from your store?

A. When I did the count on 7-2.

Q. Well, they weren't there on—

A. I am sorry. 7-7.

Q. When you did the count on 7-7?

A. That is correct.

Q. Okay. And they weren't there on 7-7 and then poof disappeared, right? I mean—

A. No, they were gone prior to that.

Q. Okay. And that is what I am asking.

I am asking you cannot tell precisely when before that date they went missing, can you?

A. *When I was approached by the officer that day on 7-2* [*sic*] *I had to do a count at that time. And that is when it was determined they were missing.*

Q. Well, you just said that you were able to tell on 7-7 that they were missing?

A. Right.

Q. Okay. On either 7-2 or 7-7 were you able to tell, precisely, when they went missing?

A. *On 7-2* [*sic*] *I was able to determine that they were missing.*

Q. Were you able to tell how long they had been missing before *the 7-2* [*sic*]*—your 7-2* [*sic*] *discovery*?

A. No, sir." (Emphases added.)

¶ 30     On redirect, Kost testified that inventory must be completed by 12 noon. Thus, as of noon on July 2, 2015, the inventory was accurate for the Prismacolor pencils in People's exhibit Nos. 5-A, B, C, and D. The examination continued:

"Q. Now, I am showing you [People's exhibit No.] 17H, that is the receipt that you previously testified to; is that right?

A. Yes.

Q. Okay. Is there a time on that receipt?

A. 1:37 p.m.

Q. Okay. So that was when the transaction with the defendant was completed?

A. Yes.

> Q. *So the inventory would have had to have been completed by noon, and the defendant left the store at 1:37?*
>
> A. *That is correct.*
>
> THE DEFENDANT: Liar." (Emphasis added.)

We note here that People's exhibit No. 17-H is dated July 3, 2015. This is consistent with all of the testimony in the case, other than what we have excerpted here.

¶ 31 On recross-examination, Kost testified that items in People's exhibit No. 5 would not have been inventoried had four or more been left on the shelf. He did not know the last time before July 2, 2015, that an inventory reflected that there were three or fewer of any type of item on the shelf.

¶ 32 On further redirect examination, Kost testified that, as of 12 noon on July 2, 2015, there must have been at least three sets of Prismacolor pencils on the shelf. When he and Thayer checked the shelf, there were none. Asked whether he could account for at least three of the missing pencils, Kost testified that he could not.

¶ 33 Vel Torlo, an Oak Brook police detective, testified that, on July 2, 2015, he followed defendant into Michael's in Schaumburg. Defendant walked to the area containing art supplies, including pencils. He ended up near the cash registers. Torlo did not know whether defendant took or bought anything.

¶ 34 Dixon testified on direct examination that, on July 2, 2015, he followed defendant into Michael's in Schaumburg. Defendant went to the section holding art supplies, selected two items, one of which appeared to be a set of pencils, and walked around an "end cap," a display adjacent to the end of a shelf. When he came out, "the items were gone." They had not been deposited into the end cap. Defendant made a small purchase and left.

¶ 35    Dixon testified that, on July 3, 2015, he followed defendant into the Hobby Lobby in Lombard. Defendant first took some pens and pencils and went down an aisle; he made some arm motions, turned around, and left the aisle. The pens and pencils "were gone." Next, defendant went down another aisle, took an "18-inch paint thing" and a paint brush, lifted his shirt, and stuck the items in his pants, covering them with his shirt. Defendant made a small purchase and left.

¶ 36    Dixon testified on cross-examination that, in Michael's, defendant looked at expensive art pencils and picked up something there. Dixon later checked the art pencils section. Dixon first testified that he did not know which brand the item was but that Michael's sold Prismacolor items in that area. Questioned further, he testified that he concluded that defendant had taken one or more boxes of Prismacolor pencils; he did not know how many boxes or how many pencils were in any box. Dixon did not see defendant put anything into the small of his back.

¶ 37    Reid Foltyniewicz, an Oak Brook police detective, testified that, on July 2, 2015, he followed defendant into the Hobby Lobby in Schaumburg. Defendant walked to an aisle containing high-end art supplies. He picked up a clear case containing art pencils, passed the cash registers, and departed. Foltyniewicz did not see him make a purchase and saw nothing in his hands. Foltyniewicz checked the aisle but could not determine which brand of pencils defendant had taken. On July 3, 2015, Foltyniewicz followed defendant into the Office Depot in Oak Brook, where defendant made a purchase.

¶ 38    Robert Christopherson testified that he was working as an Oak Brook police detective when he joined the surveillance team. On July 3, 2015, after defendant visited the Office Depot in Oak Brook, Christopherson spoke to the manager. Later that day, Christopherson observed defendant inside Jo-Ann Fabrics, where he did not see him purchase anything, then at the Hobby Lobby. During the ensuing arrest, Christopherson searched defendant. He found the items that were

admitted at trial as People's exhibit No. 14: the pencil set, paint brush, and painting knife. The pencils were found in the waistband of defendant's shorts. Christopherson could not say whether defendant could have fit all the items in People's group exhibit No. 5 underneath the waistband.

¶ 39    The State rested. Defendant put on no evidence.

¶ 40    After hearing closing arguments, the court stated as follows. The events of July 2, 2015, were relevant to the burglary charges, as they showed that defendant had planned in detail a series of retail thefts and had entered the stores named in the charges with the specific intent to commit thefts inside. This intent was shown as well by the shipping labels and printouts that proved that defendant had planned to resell the stolen merchandise online.

¶ 41    The court turned to the individual charges. On counts I and II (Lombard Hobby Lobby), defendant was guilty of burglary and theft. He entered to steal the goods that were found on his person when he was arrested. On counts III and IV (Oak Brook Crate & Barrel), defendant was guilty of burglary but not theft, as the goods allegedly taken could not be tied to that store. On counts VI and VII (Oak Brook Carson's), defendant was guilty of burglary but not retail theft, based on a similar insufficiency.

¶ 42    On count VIII, burglary (Lombard Office Depot), the court first found defendant guilty of burglary. The evidence proved that he had entered the store with the intent to commit a retail theft, as he had done with each other retail establishment. The court then turned to the charge at issue here, retail theft from the Office Depot. The court noted that Thayer had seen defendant take something and place it behind his back, although Thayer could not say what it was. Given the charge, the issue was, '[C]an we really say [defendant] took any of the pencils, which is where he was at that time." Defendant had entered two other Office Depots. Even with the testimony

regarding the inventory at the Lombard store, the court could not find beyond a reasonable doubt that defendant "took all seven of those pencil sets" from the store. The court continued:

> "That having been said, do I believe he at least took one from that location? Yes, I do. He's seen putting something in his back, and then we know the inventory is done at that peg, if that was the word, at around noon, and there was at least three there, assuming people were doing their job. And then when we go look an hour and a half later after [defendant] leaves, there is nothing. So there will be a finding of guilty."

¶ 43    The court then found defendant not guilty of count X.

¶ 44    The court sentenced defendant to five-year prison terms on his four burglary convictions and three-year terms on his two retail theft convictions, all sentences to run concurrently. Defendant timely appealed.

¶ 45                                    II. ANALYSIS

¶ 46    On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of count IX, the retail theft from the Office Depot in Lombard. In considering a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). We do not retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004). However, it is our duty to set aside a conviction when the evidence raises a reasonable doubt of the defendant's guilt. *People v. Boclair*, 129 Ill. 2d 458, 474 (1989).

¶ 47    Defendant argues that the evidence did not sufficiently connect any merchandise recovered from the SUV to the Lombard Office Depot.  He notes that he visited two other Office Depots, one in Cook County and one in Oak Brook, and that other stores might have carried the Prismacolor pencil sets that the State attempted to prove had been taken from the Lombard Office Depot.

¶ 48    Defendant also notes a serious error in the trial court's reasoning.  The court stated that the inventory had been completed "around noon" and that defendant made his purchase about "an hour and a half later," as the register tape read 1:37 p.m.  But, as defendant points out, the inventory was performed before noon on July 2, 2015, a Thursday, when defendant was still in Cook County.  Defendant was not in Lombard at 1:37 p.m. on July 2, 2015.  There was no evidence that he entered the Lombard Office Depot at any time on July 2, 2015.  The register tape showed that he made his purchase there on July 3, 2015.

¶ 49    The court might have been misled by Kost's testimony on both cross-examination and redirect examination, which we quoted and emphasized.  On cross-examination, Kost repeatedly referred to his "discovery" on "7-2," even though defendant was not there that day.  On redirect, in response to a leading (and misleading) question, Kost mistakenly placed defendant in the Lombard Office Depot on July 2, 2015.  However, given the consistent testimony by the surveillance team officers, as well as the information on the register tape, a rational finder of fact could not have concluded that defendant was in the Lombard Office Depot on July 2, 2015.  Moreover, given Kost's testimony that inventories were performed on Thursdays, but not Fridays, a rational finder of fact could not have concluded that the inventory was performed not on Thursday July 2, 2015, but on Friday, July 3, 2015.  Unfortunately, the court appears to have been misled by the examination of Kost, which, admittedly, approached surrealist comedy.

¶ 50    The issue, nonetheless, its not whether the trial court's reasoning was unassailable, but whether the evidence was legally sufficient to prove guilt beyond a reasonable doubt.  We hold that it was not.

¶ 51    Count IX charged defendant specifically with the theft of art pencils from the Lombard Office Depot.  Thayer's report conceded that an examination of the items seized from the SUV did not enable the police to tell from which Office Depot a given item came.  Kost conceded that even if a bar code showed that an item could have been sold by Office Depot, the item might still have been sold by another company.  Thayer testified that he saw defendant remove an item and place it into the small of his back while he was standing in the aisle that sold high-end art pencils and markers.  Thayer could not even describe the item, much less identify it.

¶ 52    Moreover, both Torlo and Dixon observed defendant in an aisle in Michael's in which high-end art pencils were sold.  Dixon observed defendant closely and concluded that he took one or more boxes of Prismacolor pencils, the type of item in People's group exhibit No. 5.  Defendant also visited two Office Depot stores besides the one in Lombard, and Jo-Ann Fabrics, all of which sold high-end art pencils.  DeMario saw defendant in the Office Depot in Schaumburg, standing in the aisle that included art pens and pencils.  She described actions that suggested that he stole something from that aisle.  Given this evidence, a rational fact finder could not have found beyond a reasonable doubt that, if defendant stole the art pencils at all, he took them from the Lombard Office Depot.  Even granting defendant's theft of the items in the exhibit, the provenance of the pilfered pencils was not proved beyond a reasonable doubt.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we reverse defendant's conviction of retail theft under count IX and otherwise affirm the judgment of the circuit court of Du Page County.

¶ 55    Affirmed in part and reversed in part.