2021 IL App (2d) 190859-U
No. 2-19-0859
Order filed November 12, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-DT-2379 |
| CLAUDE H. REED, | ) ) ) | Honorable Ann Celine O. Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held:*  Defendant's conviction of driving under the influence was supported by his erratic and hazardous driving, his failed field sobriety tests, and his admission that he had drunk a significant quantity of alcohol about an hour before the stop; affirmed.

¶ 2     After a jury trial, defendant, Claude H. Reed, was convicted of driving under the influence

of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)) and was sentenced to a year of probation.

On appeal, he contends that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4    At trial, the State called Kevin Dardugno, an Illinois State Police trooper. On direct examination, he testified as follows. On October 28, 2018, at approximately 2:29 a.m., he was patrolling in his marked squad car, going east on Interstate Route 88 (I-88). The weather was clear and dry. Dardugno observed a Lincoln sedan about 100 feet in front of him. Initially, the Lincoln's driver was "having difficulty holding the lane straight." Then, the Lincoln moved partly into the adjacent lane, nearly striking another vehicle. The Lincoln's turn signal never activated and it continued, going above the speed limit. Another car got out ahead and signaled to move into the Lincoln's lane, but the Lincoln swerved around it, then returned to the lane ahead of the other car. In all, Dardugno saw the driver of the Lincoln commit at least three traffic offenses: speeding, improper lane usage, and failure to signal a lane change.

¶ 5    Dardugno followed the Lincoln and activated his emergency lights. The driver slowed down and pulled to the right shoulder without incident. Dardugno exited his car and approached the passenger side of the Lincoln. Defendant was in the driver's seat and a woman was in the front passenger seat. Dardugno identified himself and explained why he had pulled the car over. He asked defendant where he was headed. Defendant said he was going to his home in Maywood. Dardugno detected the odor of alcohol and asked defendant whether he had been drinking. Defendant said that he had a couple of drinks. Dardugno asked him whether he knew what highway he was traveling on. Defendant said that he was "headed towards 290." Dardugno did not think that this answer was very clear, so he asked again. Defendant said he was traveling on Route 294. At the time, however, defendant was on I-88.

¶ 6    Dardugno testified that he asked defendant for his license and insurance card. Defendant produced his license, and his passenger looked for the insurance card. Dardugno asked defendant again how much alcohol he had drunk. Defendant said that he drank two beers and a shot of rum

about an hour earlier. Dardugno left to run a routine identification check and promptly returned to the passenger side. He moved around to the front of the Lincoln and asked defendant to exit the car. Defendant exited without incident. At first, defendant did not complain of any pain. When the two men moved to the place in between the cars, defendant told Dardugno that he had undergone hip replacement surgery and back surgery and was taking prescription medicine. Dardugno asked him whether he was able to walk. Defendant said that he was.

¶ 7       Dardugno testified that, at that point, he smelled an odor of alcohol from defendant's person. Defendant's breathing appeared to be slightly labored, and he explained to Dardugno that he was on a respirator. Dardugno saw no obvious signs that defendant needed help to breathe. Before administering the horizontal gaze nystagmus (HGN) test, the first field sobriety test, Dardugno asked defendant whether he had suffered any recent head injuries. Defendant said no. Defendant's speech sounded mumbled. For the HGN test, Dardugno instructed defendant to stand in front of him, to keep his hands down, to keep his head still, and to follow the tip of Dardugno's moving finger with his eyes. Defendant agreed to take the test. At first, he did not follow the instructions, just staring at Dardugno instead of following his finger. He also moved his head twice. Dardugno had to remind defendant twice to follow the directions. When defendant followed the directions and took the test, he failed it. Dardugno testified that this established that defendant had consumed alcohol.

¶ 8       Dardugno testified next that he asked defendant to perform the walk-and-turn test, which required him to walk nine heel-to-toe steps down an imaginary line, turn, and walk nine heel-to-toe steps back. The heel and the toe were supposed to touch. During the instructional phase of the test, Dardugno told defendant to place his left foot on the imaginary line and put his right foot directly in front of the left foot while Dardugno finished the directions. Defendant did not "enter

the instructional phase." Instead of assuming the directed posture, "[h]e essentially just stood with his feet at his side."

¶ 9    Dardugno testified that defendant performed the walking portion of the test. On the initial nine steps down, he did not even attempt to touch his heel to his toe but took a "regular walk." Defendant then turned incorrectly, not planting his foot but using a series of smaller steps. On the walk back, defendant did not touch heel-to-toe. During the whole walking portion, defendant walked in a "relative[ly]" straight line, not stumbling out into traffic.

¶ 10    Dardugno testified that there are eight clues in the walk-and-turn test. He observed four: defendant did not touch heel-to-toe during the instructional phase; he missed touching his heel to his toe; he did not attempt to walk a single straight line; and he made an improper turn. Dardugno testified that defendant did not pass the test. Asked to explain what that meant, Dardugno testified, "More specifically, it's impairment."

¶ 11    Dardugno testified that defendant declined to take the one-leg-stand test. Defendant explained that he was unable to perform the test, because of "something with his legs." While interacting with Dardugno, defendant stood up, walked normally without a limp, and did not indicate any pain while walking.

¶ 12    The State played portions of a video taken by Dardugno's squad-car camera. The portions showed the HGN test and the walk-and-turn test. Dardugno then testified that, as shown on the video, he had to remind defendant three times during the HGN test to keep his eye on the stimulus. Further, Dardugno confirmed that the video showed that defendant did not touch heel-to-toe during the walk-and-turn test.

¶ 13    Dardugno opined that, based on his experience and training, he believed that defendant was under the influence of alcohol. Dardugno based this conclusion on "a combination of [defendant's]

driving, speech, [and] the field sobriety testing." Dardugno arrested defendant and drove him to a police facility. There, Dardugno observed defendant for 20 minutes and then asked him to provide a chemical breath sample. Defendant attempted to do so, but, after three opportunities to blow into the machine, defendant could not produce a sufficient sample.

¶ 14     Dardugno testified on cross-examination as follows. At the point where he first observed defendant, eastbound I-88 led to two different forks: an off-ramp on the right, where a vehicle can exit and go south on Route 294, and, further on, one where a vehicle can enter the far-left lane and proceed east on Route 290 or enter the middle lane and proceed north on Route 294. When he stopped defendant, Dardugno had passed the off-ramp for southbound Route 294 and was near or at the end of I-88 and the beginning of the second fork. Thus, at the time of the stop, defendant was going onto eastbound Route 290, which was the correct way to get to Maywood. Defendant pulled over onto the shoulder safely and did not have difficulty finding and handing over his license. Defendant exited his car without difficulty and did not need to use the door for support.

¶ 15     Dardugno recognized that the odor of alcohol reveals only the consumption of alcohol, not impairment. The HGN test shows consumption of alcohol but does not necessarily show impairment. The walk-and-turn test does measure impairment. People with leg or back injuries can have trouble performing it, but, since defendant did not have trouble walking, Dardugno concluded that he could perform the test without undue difficulty. Dardugno acknowledged that, when he asked defendant to take the test, defendant immediately said that he had two hip-replacement surgeries. Dardugno responded, "[I]f you can walk, you can do this test." Furthermore, the test is about not only walking but also being able to pay attention to instructions; anyone can at least attempt to take the test as instructed. Because defendant had been walking and talking with him, Dardugno concluded that he could at least attempt the test.

¶ 16    Dardugno testified that, during the walk-and-turn test, defendant took the correct number of steps in both directions; did not start too soon; did not stop walking at any point; and did not raise his arms at any point. When Dardugno asked defendant to take the one-leg stand, he immediately blurted out, "I can't do that." Defendant's license stated that he weighed 240 pounds and was 5'11" tall.

¶ 17    Dardugno testified that, at the police station, after defendant failed to provide a sufficient breath sample, he had defendant sit on a bench. For the rest of the time, defendant was coughing heavily. Another trooper brought defendant's inhaler to him from his car; defendant used the inhaler two or three times, and it appeared to help. Dardugno asked him several times whether he needed to have an ambulance called. Defendant refused, but eventually Dardugno decided to call an ambulance and have defendant checked out.

¶ 18    Dardugno testified that defendant was polite and cooperative at all times. His answers to Dardugno's questions made sense. Defendant's speech seemed mumbled but not slurred. Dardugno had not met him before or spoken to him since. Defendant's ability to understand instructions was "fair."

¶ 19    Dardugno testified on redirect that defendant did try to walk before the instructions for the walk-and-turn test were finished. Dardugno put his arm out to signal that he had to finish explaining. However, he did not mark this as a clue against defendant. For both the HGN test and the walk-and-turn test, Dardugno had to remind defendant several times about the directions that he had given. Although defendant at one point said that he was driving on Route 294, none of the driving before the stop had been on Route 294.

¶ 20    The State rested.

¶ 21 Defendant testified on direct examination as follows. He was 60 years old. Early on the morning of October 28, 2018, he was using his car's GPS to drive home. While driving, he had an asthma attack. He had his inhaler in his pocket, but, as he reached for the inhaler, it fell to the floor. He reached down to get it. He retrieved the inhaler and used it. Afterward, he saw a police car behind him with its lights and sirens going. Defendant pulled over. He cooperated with the officer and truthfully answered his questions.

¶ 22 Defendant testified that medical conditions affected his mobility. He had back surgery and two hip replacements. He told Dardugno about these mobility problems. During the stop, he believed that these conditions would make it hard or impossible to complete the field sobriety tests, especially the one-leg stand test. At the station, he had a coughing attack and had to use his inhaler three times.

¶ 23 Defendant testified on cross-examination that, when his inhaler fell to the floor, he reached down to grab it without pulling over, although he was driving around 60 miles per hour. When he reached down, the car swerved. He did not signal when he was merging lanes. He was not positive whether he increased his speed while he was driving. Defendant told Dardugno that he had drunk two beers and a shot. He also told Dardugno that he was on Route 290, which was correct; he was not on I-88 when he was stopped.

¶ 24 The jury found defendant guilty of DUI. The trial court sentenced him to a year of probation. This timely appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26 On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of DUI. Defendant acknowledges that he admitted having consumed alcohol about an hour before the stop and that his breath smelled of alcohol, but he notes that evidence of alcohol consumption

does not itself prove intoxication. He argues that the evidence showed that he was cooperative, responsive, and able to produce his license and exit the car without any signs of impairment. Defendant concedes that he committed several traffic offenses and failed the walk-and-turn test, but he contends that these shortcomings could be explained by facts other than intoxication, primarily his physical limitations.

¶ 27    The State argues that defendant's drinking, his erratic and unsafe driving, his failure in both the instructional and performance phases of the walk-and-turn test, and Dardugno's opinion that he was impaired were in combination sufficient proof of DUI. We agree with the State.

¶ 28    When faced with a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational factfinder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995). It is not our function to retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 29    A person commits DUI as charged here when, " 'as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). Evidence of impairment can include that the defendant's breath smelled of an alcoholic beverage and that he failed a field sobriety test. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). A DUI conviction may be based solely on the testimony of the arresting officer, if credible. *People v. Janik*, 127 Ill. 2d 390, 402 (1989).

¶ 30    Defendant correctly notes that the evidence showed that he was able to respond to Dardugno's questions, that he produced his driver's license without difficulty, and that he exited his car without stumbling or staggering. However, the State did not need to prove that defendant had any difficulty with these tasks, as long as the evidence it did produce of defendant's impairment was sufficient. Here, that evidence, when viewed in the light most favorable to the prosecution, was more than sufficient.

¶ 31    First, defendant admitted that he drank two beers and a shot of rum within about an hour before the stop. Although defendant is correct that consumption of alcohol *by itself* does not prove impairment (*People v. McHugh*, 121 Ill. App. 3d 825, 833 (1984)), it was highly relevant that he consumed a substantial amount of alcohol shortly before Dardugno saw him driving. Further, Dardugno saw defendant commit several traffic infractions in a short period: improper lane usage, failing to signal a lane change, and speeding. Each infraction was serious. In combination, they created a needless danger to defendant, his passenger, and other vehicles, proving that defendant was incapable of acting with ordinary care. Defendant argued that his erratic driving resulted from an asthma attack and reaching for his inhaler. But the jury could find that this explanation failed to account for the severe irregularities in his driving, including speeding, swerving into another lane, and nearly hitting another vehicle, and, most notably, suddenly reentering the lane ahead of the vehicle with which he had just almost collided. Moreover, that defendant reached for his inhaler while driving at a high speed strongly suggested impaired judgment. And the jury could conclude that defendant's impairment resulted from his recent drinking.

¶ 32    Defendant's conduct after he was stopped also provided evidence that his driving had been impaired by his consumption of alcohol. Dardugno's testimony about the field sobriety tests established two things. First, defendant failed the performance part of the walk-and-turn test.

Second, defendant had difficulty following the instructions for both the HGN test and the walk-and-turn test. Both of these deficiencies were evidence of impairment as Dardugno testified. In short, Dardugno's testimony, along with common knowledge, reasonably allowed the jury to infer that defendant was illegally impaired by alcohol.

¶ 33    As he did at trial, defendant argues that his asthma and his musculoskeletal impairments explained his difficulties. However, there was good cause for the jury to reject these alternative hypotheses. First, defendant's physical impairments did not prevent him from walking normally from his car to the site of the tests or from standing while Dardugno explained and administered the tests. Defendant agreed to take the walk-and-turn test, apparently believing that his infirmities would not render the test unfair or inappropriate. Defendant also refused the one-leg stand test, showing that he was capable of declining a field sobriety test. Moreover, as to the walk-and-turn test, the jury could find that defendant's back and hip conditions were not the cause of his failure to walk a straight line, touch his heel to his toe at all, or turn correctly. Finally, of course, there was no evidence that defendant's physical infirmities caused his failure to follow directions; that was a matter of paying attention, focusing, and understanding—and attention, focus, and understanding can all be diminished by alcohol consumption.

¶ 34    Dardugno testified that, in his opinion, defendant drove while he was impaired by alcohol. That opinion was credible, as it was supported by Dardugno's observations and defendant's admissions. Accordingly, we determine that defendant was proved guilty beyond a reasonable doubt of DUI.

¶ 35                                        III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 37    Affirmed.